THE BRANN & STUART CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12675. Promulgated October 9, 1947.

*C. Walter Randall, Jr., Esq.,* for the petitioner.
*William H. Best, Jr., Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency in excess profits tax for 1942 in the amount of $98,582.70 and one for 1943 in the amount of $44,310.00. The parties have settled a number of matters by agreement and the only issue for decision is whether amounts which the petitioner borrowed from banks should be considered as borrowed capital in the computation of its excess profits credit, based upon invested capital. The stipulation of facts and the exhibits offered in evidence are adopted as the findings of fact.

The petitioner is a Pennsylvania corporation which filed its returns for the years in question with the collector of internal revenue for the first district of Pennsylvania.

It was engaged during the taxable years in the engineering and general contracting business, and particularly in the performance of certain contracts entered into with the War and Navy Departments of the United States Government. It had several contracts with the War Department and one with the Navy Department during those years, all of which were on the basis of cost plus a fixed fee.

The petitioner was required to satisfy the War and Navy Departments that it had sufficient capital and credit to enable it to perform the contracts. A bank, or banks, in Philadelphia agreed to lend money to the petitioner up to a certain large amount and the War and Navy Departments were so advised. The petitioner arranged for its own borrowings and agreed to pay interest thereon. The amount actually loaned to it by the banks is not in dispute.

The petitioner submitted payment requisitions to the Government and the latter gave checks for the work from time to time as it progressed. The contracts provided that claims for money due or to become due under the contracts could be assigned to any bank or other financial institution, and in such case the assignee should file with the Government written notice of the assignment.

The bank made loans to the petitioner, each of which was evidenced by a demand note of the petitioner bearing interest. The petitioner at various times assigned to the bank its right to receive moneys from the Government under the contracts. The bank kept a separate account for each contract. The petitioner made payments to the bank prior to the assignment where credit was extended prior to the assignment, but after the assignments were made the Government sent the checks for money due under the contracts directly to the bank, as required by the assignment. The bank then credited them against the outstanding notes. The petitioner received monthly statements from the bank in regard to the credits.

Section 714 of the Internal Revenue Code provides for a credit based upon the taxpayer's invested capital. Invested capital is defined in such a way as to include in the computation borrowed capital, which is defined as including "The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note * * *." Sec. 719 (a) (1). See also secs. 715, 716, and 717. The facts show that the petitioner had outstanding indebtedness to the bank evidenced by its note and, under the plain words of the statute, it is entitled to the credit which it claims.

The respondent says:

Where a bank advances credit to a taxpayer for the purpose of financing a War Project and the taxpayer, in order to obtain such credit, assigns to the bank the right to collect moneys due under its Government contract, such taxpayer is not entitled to claim said advances as "borrowed invested capital"

credits, within the meaning of Section 719 of the Internal Revenue Code, in computing its net income subject to excess profits tax.

\* \* \* \* \* \* \*

\* \* \* The essence of the "borrowed invested capital" involved herein is that the same was in substance loaned by The First National Bank of Philadelphia, Philadelphia, Pennsylvania, to the United States Government. Ostensibly the loan was to the petitioner but it was in fact made by the Bank on the direct credit of the United States Government and the payments in settlement of the "borrowed invested capital" items were made directly by the General Accounting Office of the United States Government to the Bank.

He cites no direct authority for this contention and we are unable to find any merit in it.

This petitioner actually borrowed the amounts stipulated by the parties. It was indebted to the bank for the repayment of those loans. They were evidenced by notes. The petitioner had to pay not only the interest, but also the principal on the notes. The Government was in no way obligated to pay either principal or interest. It did not arrange for the loans and it was in no sense the debtor. The petitioner did not assign the contracts to the bank. It performed the contracts itself and earned the compensation provided therein for its services. It merely assigned to the bank its right to receive moneys under the contracts from the Government in payment for materials, supplies, and work performed by the petitioner. It did that at the insistence of the bank, to protect the bank. That arrangement did not make the borrowings any the less the borrowings of the petitioner. Both form and substance seem to bring these transactions within the words of the statute. And, furthermore, no reason appears for believing that Congress did not intend the provision to cover a situation like this.

*Decision will be entered under Rule 50.*