MAHONEY MOTOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22051.   Promulgated August 11, 1950.

*James J. Fitzgerald, Jr., Esq., James W. R. Brown, Esq.,* and *Wilbur R. Irwin, C. P. A.,* for the petitioner.
*George E. Gibson, Esq.,* for the respondent.

OPINION.

JOHNSON, *Judge:* Petitioner contends that sums borrowed by it to purchase United States Treasury obligations, which borrowings were evidenced by notes, the notes being secured by the obligations purchased, constitute borrowed invested capital under section 719,[1] Internal Revenue Code, for the purpose of computing its excess profits tax credits for 1944 and 1945. It is petitioner's position that the instant proceeding is ruled by *Globe Mortgage Co.*, 14 T. C. 192.

Respondent contends that these sums do not constitute borrowed invested capital within the meaning of section 719. He relies upon Regulations 112, section 35.719–1,[2] and upon *Hart-Bartlett-Sturte-*

---

[1] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *.

＊          ＊          ＊          ＊          ＊          ＊          ＊

(b) BORROWED INVESTED CAPITAL.—The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day.

[2] SEC. 35.719–1. BORROWED INVESTED CAPITAL.—The borrowed invested capital for any day of the taxable year is 50 percent of the borrowed capital for such day determined as of the beginning of such day. Borrowed capital is defined to mean:

(a) Outstanding indebtedness (other than interest, but including indebtedness assumed or to which the taxpayer's property is subject) of the taxpayer which is evidenced by a bond, a promissory note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

＊          ＊          ＊          ＊          ＊          ＊          ＊

In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit. ,

＊          ＊          ＊          ＊          ＊          ＊          ＊

*vant Grain Co.*, 12 T. C. 760; affd., 182 Fed. (2d) 153, (hereinafter referred to as the *Hart-Bartlett* case).

In view of the reliance by the parties upon the two cases above cited, a brief summary of those cases is in order. In the *Hart-Bartlett* case, which antedated the *Globe Mortgage Co.* case in this Court, the taxpayer, a corporation engaged in the grain business, borrowed substantial amounts during the taxable year and used them to purchase United States securities during war loan drives. It allocated its security purchases to communities where it had grain elevators to obtain local good will. The amount of interest payable on the securities was substantially the same as the amount the taxpayer had to pay on notes evidencing its borrowings. The taxpayer contended that the borrowed amounts constituted borrowed invested capital under section 719. It attacked the validity of Regulations 112, section 35.719–1, requiring that to qualify as borrowed invested capital under section 719 an indebtedness must be incurred for business reasons, and also argued in the alternative that even if the regulation was valid, it, the taxpayer, borrowed the sums in question for business reasons in that, by participating in war loan drives in the communities where it had grain elevators, it obtained local good will essential to its business. This Court upheld the validity of the regulation, found that the sums in question were not borrowed for business reasons and not subject to business risks and sustained the Commissioner's determination that the sums did not constitute borrowed invested capital under section 719. The Court of Appeals, Eighth Circuit, affirming this Court, said in part:

* * * We note that the statute does not provide for a credit based on a taxpayer's total asset value, but only upon invested capital. And while the sums borrowed by petitioner do constitute borrowed capital they do not constitute borrowed invested capital. * * *

In the *Globe Mortgage Co.* case, *supra*, the taxpayer, a corporation engaged in the general investment and finance business, was accustomed to borrowing large sums from the banks to finance its business investments. When, as a result of wartime building restrictions, the taxpayer became unable to obtain sufficient mortgage loan investments, it used its available credit to borrow substantial amounts from banks to purchase U. S. Government securities, depositing the securities purchased, together with additional cash, with the banks for collateral. It was to the taxpayer's interest to maintain the level of its borrowings from the banks in order to keep open its available credit lines with them. Also, the taxpayer had for several years made investments in corporate and Government securities in its business. Upon the liquidation of this investment in U. S. Government securities, the taxpayer realized a net profit of $115,669.37. This Court found these facts

clearly distinguishable from the facts in the *Hart-Bartlett* case and concluded that the borrowings in question were for business reasons and that the amounts borrowed were includible in the taxpayer's borrowed invested capital under section 719.

Petitioner herein, as did the taxpayer in the *Hart-Bartlett* case, attacks the validity of Regulations 112, section 35.719–1, *supra*. However, following our decision and that of the Court of Appeals, Eighth Circuit, in that case, we hold that the regulation is in clear harmony with the statute and is therefore not subject to attack. Cf. *Emeloid Co.*, 14 T. C. 1295.

Similarly, petitioner's argument that, under section 719, 50 per cent of all borrowed capital automatically constitutes borrowed invested capital is precluded by the language we have quoted above from the opinion of the Court of Appeals, Eighth Circuit, in the *Hart-Bartlett* case, to the effect that sums may be borrowed capital and yet not constitute borrowed invested capital.

We are met, therefore, with the problem of whether the sums herein are borrowed invested capital within the statute and borrowed for business reasons within the regulations. We have found that petitioner realized a profit on these investments in Government securities in the amount of $4,704.42 net interest profit over the interest it paid on the notes and in the amount of $17,647.22 net premium on the sale of the securities, making a total net profit of $22,351.64. In the *Hart-Bartlett* case the Court of Appeals, Eighth Circuit, found that the borrowings therein did not qualify as borrowed invested capital because:

\* \* \* The sums borrowed were never actually invested as a part of petitioner's working capital, they were never utilized for the earnings of profits and they were never subject to the risk of petitioner's business. \* \* \*

Here the sums involved were utilized for the earnings of profits. But we note that the sentence above quoted from the opinion of the Court of Appeals in the *Hart-Bartlett* case does not use the disjunctive "nor" but the conjunctive "and." We therefore can not say that to qualify as borrowed invested capital as distinct from mere borrowed capital it is sufficient under the language of that opinion for borrowed sums simply to have been utilized for the earnings of profits without having also been a part of the taxpayer's working capital and subject to the risk of the taxpayer's business. Cf. *Emeloid Co., Inc., supra*.

Similarly, in *Globe Mortgage Co., supra*, this Court said.

\* \* \* the fact that petitioner did realize a substantial profit on the investments does not in itself determine whether the investments were bona fide transactions in connection with petitioner's business, \* \* \*.

Thus we think it clear that the phrase "borrowed invested capital" in section 719 means invested in the business of the taxpayer, and the phrase "for business reasons" in Regulations 112, section 35.719–1,

means for reasons of the business of the taxpayer and does not include all transactions entered into for profit by the taxpayer or from which profit was realized by the taxpayer. As said in *West Construction Co.*, 7 T. C. 974 (at 978) :

* * * We must never lose sight of the fundamental purpose of the legislation, which was to establish a measure by which the amount of profits which were "excess" could be judged. Thus, capital funds placed at the risk of the business might be regarded as entitled to an adequate return. * * *

Similarly, in *Player Realty Co.*, 9 T. C. 215, this Court said:

We are therefore of the opinion that by the use of outstanding indebtedness the statute contemplates the inclusion in invested capital of outstanding indebtedness, in the form required, for capital borrowed and *invested in the business of the taxpayer* * * *. [Emphasis added.]

Here petitioner was an automobile dealer. It was not in the investment business. There is nothing in the record to show that it had ever invested in Government securities or any other securities before 1944, when the securities herein were purchased, or after 1946, when they were sold, or that it had ever borrowed from banks before 1944, or after 1946. The program of borrowing from banks and investing in Government securities here embarked upon by petitioner was a purely collateral undertaking so far as its automobile dealer business was concerned. The borrowings were at no time placed at the risk of the automobile dealer business, but were used to buy Government obligations and secured by the obligations purchased. It is obvious that this factual situation is considerably different from that in *Globe Mortgage Co.*, *supra*, where this Court concluded from the facts:

* * * that the petitioner borrowed the sums here in question and used them to purchase Government securities in the normal course of its business as bona fide business transactions, subjecting the borrowed capital to business risks for profit. * * *

The borrowings herein amounted to $385,000 as of December 31, 1944, and to $380,000 as of December 31, 1945. Petitioner's total assets, including the securities purchased with these borrowings, amounted to $533,904.96 as of December 31, 1944, and to $559,629.98 as of December 31, 1945. The securities were sold and the outstanding notes retired early in 1946, at about the peak of the market for such securities, to be sure, but also, significantly, when the excess profits tax (terminated by the Revenue Act of 1945, effective as to taxable years beginning after December 31, 1945), was no longer in effect and the tax benefits of a large amount of borrowed invested capital could no longer be obtained, the same factual situation obtaining in the *Hart-Bartlett* case, *supra*. In contrast, the taxpayer in *Globe Mortgage Co.*, *supra*, did not sell out the securities and repay the loans until, in some cases, long after the excess profits tax was no longer effective.

But petitioner ascribes a business reason to its borrowings from the banks in that it was seeking to establish credit lines with the banks so that it could end its reliance on automobile finance companies for credit and so that it could do its own automobile financing. We have found that petitioner's officers did have these reasons for wanting petitioner to establish bank credit lines in the automobile business before 1944 and to a lesser degree thereafter. But whether the borrowings here in question would have materially helped petitioner to attain that result is questionable. The two bankers who were called as witnesses by petitioner said that such borrowings would be "good experience" and "favorable", but at the time of the hearing in January 1950, petitioner had not yet established lines of bank credit and was still financing its automobile sales through an automobile finance company, as it has always done.

Furthermore, the fact that petitioner has never had lines of bank credit in its business, either before or after the transactions here involved, indicates that, however desirable, such lines of credit were certainly not essential to petitioner's business. This situation contrasts sharply with that in *Globe Mortgage Co.*, *supra*, where this Court found as a fact that "the development and maintenance of large credit lines were essential to petitioner's business operations." We must on the facts, then, regard petitioner's desire to establish bank credit lines for its business as no more substantial a business reason to justify the inclusion of its large borrowings in borrowed invested capital than was the desire of the taxpayer in the *Hart-Bartlett* case to obtain local good will for its business.

We accordingly conclude that the amounts borrowed herein were not borrowed for business reasons within the requirement of Regulations 112, section 35.719-1, and that they did not constitute borrowed invested capital under section 719 of the Internal Revenue Code.

*Decision will be entered for the respondent.*