MCDONNELL AIRCRAFT CORPORATION, A CORPORATION, PETITIONER, *v.* COMMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22763.  Promulgated January 25, 1951.

*Thomas S. McPheeters, Jr., Esq.*, for the petitioner.
*George E. Gibson, Esq.*, for the respondent.
*Jacquin D. Bierman, Esq.*, filed brief as *amicus curiae.*

192

OPINION.

♦ VAN FOSSAN, *Judge:* During the years involved herein petitioner was engaged in the manufacture and experimental development of aircraft and aircraft parts either under prime contracts with the War and Navy Departments or under subcontracts with other prime contractors. It was relatively a new corporation having been in existence only since July 6, 1939. Its capital was limited and in order to carry out its commitments additional funds were needed. Prior to the early part of 1943 the required funds were made available in the form of advance payments from the Government. At the suggestion of the Army Air Forces contracting officer assigned to petitioner's operations, negotiations were started which culminated in a financing arrangement known as a "V-Loan." This arrangement was in line with the War Department policies set forth in the Findings of Fact.

This financing arrangement consisted of a "Bank Credit Agreement" and nine "Guarantee Agreements." These agreements were executed concurrently. The "Bank Credit Agreement" was made between petitioner and a group of nine lending banks. It recited that petitioner and the banks wished to create a $6,000,000 line of credit to enable the petitioner "to borrow money from time to time," and that the money was to be used solely to finance petitioner's performance under certain limited contracts and other contracts to be designated in subsequent supplemental agreements.

The "Guarantee Agreements" were executed by each of the nine lending banks and the Federal Reserve Bank of St. Louis, acting as the fiscal agent of the War Department. They provided that upon 10 days' written demand the War Department would purchase 90 per cent of petitioner's outstanding indebtedness incurred pursuant to the "Bank Credit Agreement." They also provided for voluntary purchase of the unpaid principal by the War Department.

Petitioner contends that the amounts received by it under this arrangement constitute borrowed invested capital within the meaning of section 719 of the Internal Revenue Code.[3]

---

[3] SEC. 719. BORROWED INVESTED CAPITAL.

(a) BORROWED CAPITAL.—The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following:

(1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *

* * * * * * *

(b) BORROWED INVESTED CAPITAL.—The borrowed invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be an amount equal to 50 per centum of the borrowed capital for such day.

Respondent's Regulations 112, section 35.719-1 provide, in part, that:

In order for any indebtedness to be included in borrowed capital it must be bona fide. It must be one incurred for business reasons and not merely to increase the excess profits credit. If indebtedness of the taxpayer is assumed by another person it ceases to be borrowed capital of the taxpayer. For such purpose an assumption of indebtedness includes the receipt of property subject to indebtedness.

It has been held that the borrowed funds must be used for essential purposes of the business and they will not constitute borrowed capital if they are used for activities entirely unrelated to the taxpayer's business. *Mahoney Motor Co.*, 15 T. C. 118. They must be invested in the working capital of the taxpayer. They must be utilized for the earning of profits and must be subject to the risks of the business. *Hart-Bartlett-Sturtevant Grain Co.*, 12 T. C. 760, affd. (CA-8, May 5, 1950), 182 Fed. (2d) 153.

Every formal requirement of section 719 and the regulations thereunder would appear to be met by the so-called "V-Loans" made by petitioner. These loans were made directly to the petitioner. They were evidenced by its notes and they were made solely for business purposes. The funds so acquired were needed and used for working capital and were subject to the risks of the business.

It is now well established, however, that strict formal compliance is not enough for an indebtedness to qualify as borrowed capital. There must be compliance in substance as well as in form. *Player Realty Co.*, 9. T. C. 215; *Brann & Stuart Co.*, 9 T. C. 614; *Hart-Bartlett-Sturtevant Grain Co.*, supra.

It is the respondent's position that these loans were made on the credit of the United States; that they were, in substance, an indirect method employed by the Government for making advance payments; that it was the Government upon which the banks actually placed their reliance and to which they looked as the real obligor, and that, therefore, such amounts do not qualify as borrowed capital under section 719. We are unable to agree.

As a factual matter it is inaccurate to state categorically that the banks never took into consideration the credit of the petitioner. The "Bank Credit Agreement" executed between petitioner and the nine lending banks contains certain specific covenants by which petitioner bound itself not to purchase or retire its own stock, create loans or other encumbrances, borrow money or dispose of any substantial portion of its assets. Affirmatively, petitioner agreed to maintain current assets, carry insurance, pay its taxes, fulfill its contracts and agreements and furnish the lenders with periodic statements of its financial condition. It was forbidden to pay dividends in excess of

specified amounts. These strict covenants required by the lending banks are evidence that the petitioner's credit and assets were more than incidentally involved in the loans.

Furthermore, we can not agree that the arrangement was, in substance, merely an indirect method employed by the Government to make advance payments. The amounts received by petitioner were lent to it by third parties, the banks. The loans were evidenced by the notes of the taxpayer. The obligation to pay the principal and interest thereon rested primarily with petitioner. The fact that payments due petitioner under its war contracts were assigned to the lenders and payment was made directly to them, does not alter the character of the loans or constitute them advanced payments. *Brann & Stuart Co., supra.* Nor would the Government's assuming the role of guarantor of the loans change their status as borrowed capital. With the Government guarantee available to lending institutions, it was only natural that such institutions should desire it as an additional protection to them. The Government did not assume primary and direct liability for these loans made to petitioner. Until default by petitioner, the Government had no principal liability. Its liability was not only secondary to petitioner's personal liability but also to petitioner's assets pledged to secure the loan. It matters not whether, upon default, the lending institutions would look to the Government first as guarantor or to the petitioner. If the Government had been forced to fulfill its guarantee it would have been entitled to look to petitioner for reimbursement. *Du Val's Estate* v. *Commissioner*, 152 Fed. (2d) 103, certiorari denied, 328 U. S. 838. See *In re: Jamison's Estate*, (Mo., 1947) 202 S. W. (2d) 879.

Accordingly, we hold that the funds borrowed by petitioner and 90 per cent guaranteed by the Government, both in form and substance, constituted borrowed invested capital within the purview of section 719, *supra.*

The remaining issue involves the $5,000 payment made by petitioner to Washington University. Couched in the terms of pertinent statutes, the issue may be stated to be whether it is barred as a deduction under section 23 (a) (1) (A), Internal Revenue Code, by section 23 (a) (1) (B).[4]

---

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.
(B) Corporate Charitable Contributions.—No deduction shall be allowable under subparagraph (A) to a corporation for any contribution or gift which would be allowable as a deduction under subsection (q) were it not for the 5 per centum limitation therein contained and for the requirement therein that payment must be made within the taxable year.

On or about February 21, 1944, petitioner paid $5,000 to Washington University pursuant to the resolution of its board of directors set out in our Findings of Fact. It is stipulated that Washington University is "a corporation organized and operated exclusively for educational and similar purposes within the meaning of section 23 (q)" [5] and it is conceded in petitioner's brief that its directors expected the payment to be treated as a contribution or gift within the purview of that section. In its return for the year ended June 30, 1944, petitioner included the $5,000 within its total deduction for "contributions or gifts paid." As set up by petitioner, the entire amount of the deduction claimed did not exceed the 5 per centum limitation set out in section 23 (q) *supra*. However, as a result of a net operating loss deduction carried back from a subsequent year and other adjustments, the respondent in his notice of deficiency reduced petitioner's net income for the fiscal year 1944 so that the total amount of the claimed deduction for contributions was no longer within the 5 per centum limitation. Accordingly, the respondent disallowed the deduction to the extent of $3,505.77.

Petitioner claims that the $5,000 payment is nevertheless deductible under section 23 (a) (1) (A), *supra*. In support of this claim it relies on section 29.23 (a)–13 of Regulations 111 which provides, in part, that:

The limitations provided in section 23 (a) (1) and this section apply only to payments which are in fact contributions or gifts to organizations described in section 23 (q). For example, payments by a street railway corporation to a local hospital (which is a charitable organization within the meaning of section 23 (q)) in consideration of a binding obligation on the part of the hos-

[5] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(q) CHARITABLE AND OTHER CONTRIBUTIONS BY CORPORATIONS. In the case of a corporation. contributions or gifts payment of which is made within the taxable year to or for the use of:

\* \* \* \* \* \* \*

(2) A corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States, or of any State or Territory, or of the District of Columbia, or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, veteran rehabilitation service. literary, or educational purposes or for the prevention of cruelty to children (but in the case of contributions or gifts to a trust, chest, fund, or foundation, payment of which is made within a taxable year beginning after December 31, 1948 only if such contributions or gifts are to be used within the United States or any of its possessions exclusively for such purposes), no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation. \* \* \*

\* \* \* \* \* \* \*

to an amount which does not exceed 5 per centum of the taxpayer's net income as computed without the benefits of this subsection. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary.

\* \* \* \* \* \* \*

pital to provide hospital services and facilities for the corporation's employees are not contributions or gifts within the meaning of section 23 (q) and may be deductible under section 23 (a) if the requirements of that section are otherwise satisfied. \* \* \*

Respondent contends that in order for the payment to come squarely within the terms of these regulations, petitioner must now show that the $5,000 which was paid to Washington University, was not in fact a contribution or a gift, as claimed in its return, but was paid in consideration of a binding obligation to set up an aeronautical engineering course within the latter's engineering school. He argues that the evidence fails to show that the University was, in fact, bound to do anything in exchange for the money paid to it. We agree with respondent.

Until the argument that the $5,000 payment was deductible as a business expense was advanced here by petitioner, the payment had been considered by all to be a gift or contribution.

Albeit there are some facts giving color to petitioner's present claim, we believe the weight of the evidence preponderates in favor of the respondent. The communications between the parties preceding the payment refer to it as a contribution. The resolution, pursuant to which the $5,000 was paid, required that the University obtain commitments for an engineering school budget and contemplated the establishment of a course of instruction in aeronautical engineering and refers to the payment as a contribution or donation. Petitioner's directors expected the payment to be treated as a contribution for the purposes of Federal taxation and so conditioned the payment. Petitioner deducted the payment as a contribution in its tax return. The correspondence between the officials of petitioner and the University indicates that there was a common goal in the minds of both—the establishment of the above mentioned courses. This fact, however, proves nothing conclusively. The University could proceed with the project equally as well whether the payment was, as to petitioner, a gift or a business expense. Many, if not most, contributions to colleges are limited to support of some particular phase of activity and many are in consideration of the gifts of others. But these facts do not automatically render such contributions deductible as business expenses of the donor.

Looking at all the evidence, we have concluded, and accordingly hold, that petitioner is not entitled to deduct its $5,000 payment to Washington University as a business expense within the purview of section 23 (a) (1) (A), *supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*