GODFREY M. AND ESTHER WEINSTEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56409.   Filed October 28, 1957.

*Daniel Jacobson, Esq.*, for the petitioners.
*Emil Sebetic, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in income tax against petitioners, husband and wife, in the amount of

---

$3,854.71 for the year 1950. Petitioners reside in New York and filed their return for 1950 with the then collector of internal revenue for the third district of New York. The husband, Godfrey M. Weinstein, will hereinafter be referred to as petitioner. The facts have been stipulated.

The determination of deficiency for 1950 is based upon eight separately numbered adjustments made by the Commissioner, and the stipulation of facts makes clear that only adjustment (7), "the net operating loss deduction adjustment of $5,380.83," is in dispute. We point this out because petitioners now claim error in another of the eight adjustments which, they urge, is related to one of the items involved in determining the correct net operating loss deduction for 1950.

The amended petition fails to comply with our rules which require (Rule 7 (c) (4) (B) 4 and 5, Tax Court Rules of Practice) clear and concise assignments of error as well as clear and concise statements of the facts relied upon as sustaining the assignments of error. The purpose of these provisions, in part at least, is to enable the Court and the respondent to determine just what matters are being presented for adjudication. The contents of the amended petition herein, particularly the allegations of fact required to outline the controversy, are so skimpy and uninformative as to leave us in the dark. The allegations are so general and conclusory that, apart from identifying items in controversy, they give very little hint as to just what the Court is called upon to decide. But for some clarification of the issues in the stipulation, we would be unable to deal with this case on the merits, and we would consider dismissing the petition on our own motion. We have made this reference to the unsatisfactory state of the pleadings, because the issues appear to involve highly complicated statutory provisions and it is particularly important that the matters in controversy be presented to the Court with clarity. We therefore hold petitioners strictly to the terms of the stipulation in defining the issues for decision.

The problem with respect to the net operating loss deduction arises as follows: In the 1950 return a net operating loss deduction in the amount of $13,180.60 was claimed. The Commissioner reduced the deduction to $7,799.77, whereas petitioner contends that the correct amount of the deduction is $16,948.99. The deduction grows out of a net operating loss for the year 1948, which, after being absorbed in part through carrybacks to 1946 and 1947 and a carryover to 1949, is available as a carryover to 1950. No carryback or carryover of any net operating loss for any year other than 1948 is involved. The issues set forth in the stipulation of the parties relate not only to adjustments required by section 122 (a) of the Internal Revenue Code of 1939 in determining the amount of the original net operating loss for 1948 and

the portions thereof to be absorbed by carrybacks and a carryover in the years 1946, 1947, and 1949 in accordance with section 122 (b), but also to the adjustment required by section 122 (c) in converting the carryover into a net operating loss deduction for 1950. Many of the adjustments called for by subsections (a), (b), and (c) of section 122 are set forth in subsection (d), and appear in the margin.[1]

---

[1] SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

(b) AMOUNT OF CARRY-BACK AND CARRY-OVER.—

(1) NET OPERATING LOSS CARRY-BACK.—

(A) Loss for Taxable Year Beginning Before 1950.—If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed—

(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

(ii) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (c).

*       *       *       *       *       *       *

(2) NET OPERATING LOSS CARRY-OVER.—

*       *       *       *       *       *       *

(C) Loss for Taxable Year Beginning After December 31, 1947, and Before January 1, 1950.—If for any taxable year beginning after December 31, 1947, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years, except that the carry-over in the case of each such succeeding taxable year (other than the first succeeding taxable year) shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each of the intervening years computed—

(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

(ii) by determining the net operating loss deduction for each intervening taxable year without regard to such net operating loss or to the net operating loss for any succeeding taxable year and without regard to any reduction specified in subsection (c).

For the purpose of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1947, and before January 1, 1950, shall be reduced by the sum of the net income for each of the two preceding taxable years computed—

(iii) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

(iv) by determining the net operating loss deduction without regard to such net operating loss or to the net operating loss for the succeeding taxable year, and without regard to any reduction specified in subsection (c).

*       *       *       *       *       *       *

(c) AMOUNT OF NET OPERATING LOSS DEDUCTION.—The amount of the net operating loss deduction shall be the aggregate of the net operating loss carry-overs and of the net operating loss carry-backs to the taxable year reduced by the amount, if any, by which the net income (computed with the exceptions and limitations provided in subsection (d) (1), (2), (3), and (4)) exceeds, in the case of a taxpayer other than a corporation, the net income (computed without such deductions), or, in the case of a corporation, the normal-tax net income (computed without such deduction and without the credits provided in section 26 (h) and (i)).

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

*       *       *       *       *       *       *

(3) No net operating loss deduction shall be allowed;

(4) Gains and losses from sales or exchanges of capital assets shall be taken into account without regard to the provisions of section 117 (b). As so computed the amount

1. Petitioner's return for 1948 disclosed the following items of gross income, adjusted gross income, deductions, net income, exemptions, and taxable income:

A. Gross Income:
    (1) Salaries:

| | | |
|---|---|---|
| 430 E. 138th St. Corp | $5,000 | |
| Triboro Utilities Co., Inc | 750 | |
| Total Salaries | | $5,750.00 |

    (2) Income from Rents ___ 1,626.36
    (3) Losses from sale or exchanges of property [Total loss $2,825.00–50% thereof $1,412.50; capital loss limited to] ___ (1,000.00)
    (4) Loss from business ___ (35,304.45)

B. Adjusted Gross Income ___ (28,928.09)
C. Deductions:

| | | |
|---|---|---|
| (1) Contributions $648.50 | [2] 0 | |
| (2) Interest | $1,267.02 | |
| (3) Taxes | 3,479.83 | |
| (4) Medical Expenses | 1,034.50 | |
| (5) Miscellaneous | 1,824.60 | |
| Total Deductions | | 7,605.95 |

D. Net Income ___ (36,534.04)
E. Exemptions ___ 2,400.00

F. Taxable Income ___ None

In determining the net operating loss for 1948 the Commissioner made a number of adjustments, some of which do not appear to be in dispute. However, the parties are in conflict over his elimination of the following deductions:

| | |
|---|---|
| Interest | $1,267.02 |
| Taxes | 3,479.83 |
| Medical expense | 1,034.50 |
| Total | 5,781.35 |

deductible on account of such losses shall not exceed the amount includible on account of such gains.

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection. This paragraph shall not apply with respect to deductions allowable for losses sustained after December 31, 1950, in respect of property, if the losses arise from fire, storm, shipwreck, or other casualty, or from theft.

[2] By reason of percentage limitations (see sec. 23 (o), I. R. C. 1939) no deduction was claimed on the return although the contributions were itemized therein.

These were described as "nonbusiness" deductions, and were eliminated by reason of section 122 (d) (5), which provides that: "Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall * * * be allowed only to the extent of the amount of the gross income not derived from such trade or business." There is no dispute that the foregoing deductions were properly characterized as "nonbusiness." The gist of petitioner's contention is that the salaries reported in his return should be considered "nonbusiness income" with the result that it would offset most of the disallowed deductions. The difficulty with that contention is that it has already been decided adversely to petitioner in *Anders I. Lagreide*, 23 T. C. 508, and we have been shown no reason to depart from that decision. Cf. *Folker* v. *Johnson*, 230 F. 2d 906 (C. A. 2) ; *James H. Cunningham*, 20 T. C. 65.

2. Petitioner makes an alternative contention that if the Court rules that salary income must be classified as income from trade or business, then certain travel and entertainment expenses (which were not shown to have been related to any business other than the services for which he received the salary income) [3] should be allowed as a deduction under section 22 (n) (1), I. R. C. 1939, in determining adjusted gross income. The relevance of this contention to the issue before us, namely, the correctness of the net operating loss deduction for 1950, is not spelled out, although it undoubtedly has a bearing on the amount of the allowable medical deduction which depends in part upon the amount of adjusted gross income. In any event, petitioner's position is wholly without substance because the express language of section 22 (n) is a complete answer :

SEC. 22. GROSS INCOME.

(n) DEFINITION OF "ADJUSTED GROSS INCOME".—As used in this chapter the term "adjusted gross income" means the gross income minus—

(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, *if such trade or business does not consist of the performance of services by the taxpayer as an employee;* [Italics added.]

Petitioner does not explain how he expects the Court to get around the italicized language quoted above, and we are not aware of any circum-

---

[3] The travel and entertainment expenses claimed by petitioners, allowed and disallowed by the respondent in each of the years 1946 through 1950 were as follows:

| Year | Per return | Disallowed by respondent | Allowed by respondent |
|---|---|---|---|
| 1946 | $596. 40 | | $596. 40 |
| 1947 | 820. 49 | | 820. 49 |
| 1948 | 824. 60 | | 824. 60 |
| 1949 | 2, 033. 42 | | 2, 033. 42 |
| 1950 | 4, 322. 34 | $750 | 3, 572. 34 |

stances that would justify us in failing to give effect to the statute as written.

3. A third matter in dispute between the parties relates to the amount of the 1948 net operating loss that was absorbed in the years 1946, 1947, and 1949 in the course of computing the carryover to 1950. The question is whether the adjusted gross income of these 3 prior years must be computed so as to reflect in full the net operating loss deduction applicable to each of those years which in turn is based upon the 1948 net operating loss itself. If the adjusted gross income should be thus computed, then all items in the prior years, such as the deductions for contributions and medical expenses, which depend during the years involved upon the amount of adjusted gross income, would have to be modified, with the consequence that the net income for those years would be affected. The end result would then be that the carryover to 1950 would in turn be affected, since it is based upon the excess of the 1948 net operating loss over the sum of the net income for the years prior to 1950. Sec. 122 (b) (2) (C).

The answer to this problem is to be found in the statute itself. The provisions are set forth with precision in section 122 (b) (2) (C) which, if meticulously followed, will furnish the solution. It provides that if a taxpayer has a net operating loss for any year beginning after December 31, 1947, and before January 1, 1950 (here, the calendar year 1948) —

such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years, except that the carry-over in the case of each such succeeding taxable year (other than the first succeeding taxable year) shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each of the intervening years computed—

(i) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6), and

(ii) by determining the net operating loss deduction for each intervening taxable year *without regard to such net operating loss* [4] * * * [Italics supplied.]

These provisions spell out with particularity the adjustments that are required in computing the amount of the carryover. The sum of the net income of the intervening years must be subtracted from the net operating loss, but the statute calls for a recomputation of such net income for that purpose. And the provisions of clause (ii), together with the cognate provisions of clause (iv), contain those particulars of the recomputation that are dispositive of this issue. Clause

---

[4] This sentence is then followed by a provision which is obviously intended to reduce the carryover by reason of carrybacks to the 2 years (1946 and 1947 herein) prior to the year in which the net operating loss was incurred. It is set out in full in footnote 1, *supra,* and it should be noted that clause (iv) therein is the counterpart to clause (ii) quoted above.

(ii) provides for a recomputation of the net income of an intervening year (say 1949 in this case) in such manner that the net operating loss deduction for that intervening year (1949) is determined without regard to the net operating loss (sustained in 1948) that is to be the subject of the carryover. In other words, any net operating loss deduction to be taken would depend on a net operating loss or losses for some year or years other than 1948. But as applied herein the net income for 1949 would be computed without the benefit of any net operating loss deduction at all because it does not appear that there were any carrybacks or carryovers from any year other than from the year 1948 which could furnish the basis for a net operating loss deduction in 1949. Moreover, since clause (ii) eliminates the 1948 net operating loss in the recomputation of the 1949 "net income" for purposes of arriving at the carryover to 1950, it must of necessity eliminate that loss from 1949 adjusted gross income because that is the point at which it is taken into account in the process of determining net income. The net operating loss deduction is allowable as a deduction under section 23 (s), and since it is "attributable to a trade or business of the taxpayer," it must be taken, pursuant to section 22 (n), in the determination of adjusted gross income, which is merely an intermediate stage in the determination of net income.

The foregoing conclusion is supported by regulations and by a special ruling which specifically sets forth computations in accord with this construction of the statute. Regulations 111, section 29.122–4 (c) (4), dealing with "computation of net income which is subtracted from net operating loss to determine carry-backs or carry-over," provide :

(4) Any deduction which is limited in amount to a percentage of the taxpayer's net income, or adjusted gross income for taxable years beginning after December 31, 1943, shall be recomputed upon the basis of the net income or adjusted gross income, as the case may be, determined with the adjustments prescribed in the preceding paragraph.

And among the adjustments prescribed by the preceding paragraph, (3), which in turn makes applicable paragraph (1), is the one calling for a revision of the net operating loss deduction for the intervening year in such manner as to eliminate the net operating loss for the taxable year which is the subject of the carryback or carryover. The special ruling referred to above was issued on December 20, 1951, and can be found in 52–5 C. C. H. Federal Tax Reports par. 6055 and 1952 P. H. Fed. p. 8175. In matters of such complexity, administrative practice and the construction of the statute by the agency charged with its administration are of particular assistance, and we should be slow to take a different view unless it is plainly required by the statute. In the present case we are satisfied not only that such interpretation is consistent with the statute but that the statute affirmatively demands it.

The contrary view fails to distinguish between the part played by the net operating loss deduction in determining the *taxable* net income of each intervening year and the part played by it in determining the net income of the intervening years that is to be subtracted from the net operating loss for purposes of carryback and carryover. Of course, where the question is one of computing the taxable net income of one of the intervening years, the net operating loss deduction is taken in full in arriving at adjusted gross income, and other deductions (such as contributions or medical expenses) which are dependent in part upon a percentage of adjusted gross income must be revised accordingly. Cf. *McDonnell Aircraft Corporation*, 16 T. C. 189, 198–199. But that is not the issue here. The present problem relates to the computation of a carryover to a later year, and section 122 (b) (2) (C) specifically calls for certain adjustments that preclude similar treatment of the contributions and medical deductions. This result is based squarely upon the statutory provisions and we have no authority to depart therefrom.

4. A fourth point of difference between the parties, as it affects the correct amount of the net operating loss deduction in 1950 under section 122 (c), relates to whether capital loss carryovers under section 117 (e) are to be considered as losses from sales or exchanges of capital assets within the meaning of section 122 (d) (4) which is made applicable by section 122 (c). The Commissioner, on brief, concedes this issue. However, petitioner now raises a related issue, affecting an adjustment with respect to capital gains and losses made by the Commissioner in his determination of the deficiency for 1950 which was wholly separate from his adjustment of the net operating loss deduction. But as we have already pointed out, *supra*, page 143, the parties have stipulated that only the net operating loss deduction adjustment is in dispute, and in the circumstances of this case we will not consider any contentions dealing with a different adjustment.

*Decision will be entered under Rule 50.*