JAMES L. and CARYL A. OSTERHUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Osterhus v. Commissioner
Docket No. 19292-90
United States Tax Court
T.C. Memo 1992-574; 1992 Tax Ct. Memo LEXIS 596; 64 T.C.M. (CCH) 919; September 28, 1992, Filed *596 Decision will be entered for respondent. For James L. Osterhus, pro se. For Respondent: Roderick H. Fillinger. GALLOWAY
GALLOWAY
MEMORANDUM OPINION GALLOWAY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' 1985 and 1986 Federal income taxes in the respective amounts of $ 959 and $ 4,391. The issues to be decided are: (1) Whether petitioners are liable for deficiencies in taxes for the years 1985 and 1986 as a result of respondent's disallowance of a claimed 1984 net operating loss carried forward to these years; and (2) whether petitioners are entitled to deductions for home office expenses under section 280A in the taxable years in issue. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Cincinnati, Ohio, when they filed their petition. 1. Net Operating Loss Carryovers *597 to 1985 and 1986
a. Background
During the years 1984-86, James L. Osterhus (petitioner) worked full-time as a cost engineer for Procter and Gamble (P&G) in Cincinnati. Petitioner's office was in downtown Cincinnati at One Procter & Gamble Plaza. Petitioner earned salary from P&G in 1984, 1985, and 1986, in the respective amounts of $ 61,626.45, $ 64,069.84, and $ 66,046. Petitioner also owned 3 separate apartment complexes containing 74 units, which were located in various parts of Cincinnati. Petitioner received substantial gross rental receipts and incurred net losses from the operation of these rental complexes in 1984-86. The rental properties were managed during 1984-86 by petitioner with the assistance of petitioner Caryl Osterhus, who was the office manager of the apartment complexes. Mrs. Osterhus was an employee of Woodfield Enterprises, Inc. (Woodfield). Woodfield is a corporation wholly owned by petitioners, who were also its officers and directors. Caryl Osterhus earned wages of $ 6,600, $ 7,320, and $ 8,400, in the respective 1984-86 years. Petitioner drew no salary from Woodfield in the above years. Woodfield was organized primarily to employ workers *598 who perform maintenance service on the apartments. The offices of Woodfield were located in petitioner's residence on Reily Road in Cincinnati. Petitioner filed tax returns for the 1984, 1985, and 1986, years with the Cincinnati Service Center, Cincinnati, Ohio. On his 1984 tax return, petitioner reported adjusted gross income of $ 16,459.97. This amount included a loss reported from the operation of petitioner's rental properties in the amount of $ 66,629.43 (gross rentals of $ 457,581.94 less operating expenses and depreciation of $ 524,211.37). Petitioner reported nonbusiness deductions (before exemptions) totaling $ 36,491.31, resulting in a loss of $ 20,031.34. After deducting exemptions totaling $ 6,000, petitioner reported zero taxable income. Petitioner filed a timely 1985 return, on which he attached a Form 1045 (Application For Tentative Refund). Petitioner claimed a net operating loss carryover from 1984 in the amount of $ 23,431 on the Form 1045, and indicated that he was applying $ 7,337 of the claimed 1984 carryover to his 1985 return, and that the balance of the carryover amounting to $ 16,094 was being carried over to later years. Petitioner reported the balance *599 of his claimed net operating loss carryover on his 1986 tax return. Respondent disallowed the carryovers and determined deficiencies in the years 1985 and 1986, by notice of deficiency dated May 25, 1990. b. Discussion
In general, section 172 allows a deduction for an amount equal to the aggregate of the net operating loss carryovers to a taxable year plus the net operating loss carrybacks to that year. Sec. 172(a). Section 172(b), as in effect for the 1984 year, required that a net operating loss first be carried back to each of the 3 previous taxable years and, if unabsorbed by those years, that the remaining portion be carried forward to the 15 following taxable years. Sec. 172(b)(1) and (2); sec. 1.172-4(a)(1)(ii), Income Tax Regs.
Section 172(b)(3)(C), however, provides that a taxpayer may elect to relinquish the entire carryback period and carry forward the loss to the taxable years following the loss year. The parties have stipulated that no statement was attached to petitioner's 1984 return indicating an election under section 172(b)(3)(C) and section 7.0(b)(1), Temporary Income Tax Regs., 42 Fed. Reg. 1469 (Jan. 7, 1977), to relinquish *600 the carryback period with respect to a 1984 net operating loss. Notwithstanding petitioner's apparent failure to elect to forgo the carryback period, respondent first argues that, as a threshold matter, petitioner is not entitled to carryover any loss from 1984 to other tax years since he failed to establish that he incurred a net operating loss for 1984. Petitioner bears the burden of proof on this issue. Rule 142(a). Section 172(c) defines the term "net operating loss" as follows: For purposes of this section, the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income. Such expenses shall be computed with the modifications specified in subsection (d). Section 172(d)(4) requires that the net operating loss amount be modified so that nonbusiness deductions of an individual taxpayer not attributable to the taxpayer's trade or business shall be allowed only to the extent of the amount of gross income not derived from such trade or business. In her notice of deficiency, respondent determined that petitioner incurred no 1984 net operating loss. Respondent's calculation is as follows: Loss per 1984 return before exemptions
$ (20,031.34)
Zero bracket amount
(3,400.00)
Exemptions
(6,000.00)
Loss before modifications
(29,431.34)
Section 172(d) modifications:
Exemptions
6,000.00 Total nonbusiness deductions per 1984
return or as adjusted by respondent:
$ 39,230.08
Less total nonbusiness income per
return  15,522.89
Unallowable nonbusiness deductions
23,707.19 Total modifications
29,707.19 Statutory gain
$ 275.85 Net operating loss
None   *601 Respondent agrees that petitioner correctly computed the loss reported of $ 29,431.34. However, respondent argues that petitioner failed to limit his reported loss by the section 172(d) modification limiting the claiming of nonbusiness deductions to the amount of reported nonbusiness income. Petitioner offered no explanation for failing to make this adjustment nor any statutory authority supporting his calculation. Petitioner also argues that his salary earned at P&G is not business income and that he incorrectly offset that salary against his rental loss in calculating the 1984 net operating loss on Form 1045. Petitioner claims that a correction of this alleged calculation error would substantially increase his $ 23,431 net operating loss reported on Form 1045. Petitioner relies on Luton v. Commissioner, 18 T.C. 1153 (1952) to support his contention that P&G salary need not reduce his net operating loss generated from the rental business. In Luton this Court held that in calculating a net operating loss, salary was considered nonbusiness income. However, Luton was overruled by the Court in Lagreide v. Commissioner, 23 T.C. 508, 513 (1954), *602 where we held that the salary received by a teacher was derived from the operation of a trade or business carried on regularly by her, which must be applied in full against her husband's net operating loss for carryback purposes. We have since affirmed this holding in Weinstein v. Commissioner, 29 T.C. 142, 146 (1957), and Hayman v. Commissioner, T.C. Memo. 1968-103, affd. without published opinion 69-1 USTC par. 9350, 23 AFTR 2d 69-1027 (D.C. Cir. 1969), in which we stated "We are not disposed to reach a different result in this case which would entail the overruling of both the Lagreide and Weinstein cases." Accordingly, we conclude that petitioner incurred no 1984 net operating loss to be carried back or forward under section 172. In view of our holding, we find it unnecessary to discuss respondent's alternate contention that no net operating loss deduction is allowable in either of the years 1985 and 1986 since petitioner failed to elect to forgo applying the alleged 1984 loss to the carryback years before carrying the loss forward to years after 1984. Respondent's *603 disallowance of the net operating loss carryovers to 1985 and 1986 must be sustained. 2. Home Office Expense
During 1985 and 1986, petitioner used a portion of his residence in connection with his apartment rental business. Petitioner's large residence contains over 4,000 square feet on 3 floors with 11 rooms. The first floor contains about 1,660 square feet: A kitchen, dining room, living room, and library/reception room, the last of which comprises about 700 square feet of the first floor area. The second floor contains 4 bedrooms of undisclosed dimensions. The third floor area includes a family room (over one-half of the 1,070 square footage), a small office, and a computer room. Petitioner claims that three rooms -- the first floor library/reception room, the third floor office, and the computer room were used exclusively for business. Petitioner divided the 3 claimed home office rooms by 11, and seeks to deduct 27 percent of the residence utilities, water, telephone, and insurance costs, totaling $ 11,450 and $ 11,163, respectively, in the years 1985 and 1986. Respondent claims that petitioner may not deduct the amounts claimed because he has failed to show that *604 any portion of petitioner's residence was used exclusively for business purposes. Section 280A establishes the general rule that no deduction is allowed with respect to business use of a taxpayer's personal residence. Section 280A(c)(1)(A), [1] however, provides that section 280A(a) shall not apply if a portion of the taxpayer's personal residence is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1556-1557 (1987); Lewis v. Commissioner, T.C. Memo. 1989-78, affd. without published opinion 928 F.2d 404 (6th Cir. 1991). *605 Petitioner used his residence as the principal place of business for his rental operations. However, petitioner's testimony and other evidence fails to establish that petitioner used any portion of the questioned three rooms in his residence exclusively for business purposes. Petitioner testified that the library/reception room was "a regular library". It contained income tax and personal books as well as some of petitioner's P&G cost engineering books. The third floor small office, and computer room were used, among other things, to prepare handwritten income tax returns, which in 1985 and 1986 included numerous computer-generated supplemental schedules. The legislative history of section 280A dealing with exclusive use explains: Exclusive use of a portion of a taxpayer's dwelling unit means that the taxpayer must use a specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test. Thus, for example, a taxpayer who uses a den in his dwelling unit to write legal briefs, prepare tax returns, or *606 engage in similar activities as well [as] for personal purposes, will be denied a deduction for the expenses paid or incurred in connection with the use of the residence which are allocable to these activities. * * * [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 186; H. Rept. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 853]. Petitioner also argues that an Internal Revenue auditor for the 1987 tax year allowed him to deduct 27 percent of his agreed residence expenses as a home office deduction. However, whether similar deductions were allowed in other years is not relevant. See Weischadle v. Commissioner, T.C. Memo. 1988-47. Because no portion of petitioner's residence was used exclusively for business purposes, petitioner may not deduct any expenses with respect to the use of his residence. Decision will be entered for respondent. Footnotes
1. Section 280A(c)(1) provides in part: (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis --
(A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, * * *↩