## DAILY JOURNAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10240.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1943.

Latham & Watkins, Dana Latham, and Ronald C. Roeschlaub, all of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, S. Dee Hanson, and Alvin J. Rockwell, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Petitioning corporation seeks our review of an order of the Board of Tax Appeals, now called Tax Court of the United States, sustaining deficiencies in its income taxes for the years 1936, 1937 and 1938, asserted by the Commissioner of Internal Revenue because of a disallowance of a deduction from its gross income of a portion of the salary of its president. The ground of the decision is that a portion of the president's services was rendered to another corporation and not as petitioner's agent, and therefore not deductible. Hence (a) the true annual taxable incomes are larger than returned with corresponding increases in the taxes due for the years 1936-37-38, and (b) since petitioner is a personal holding company, the years' net gains so far as consisting of the amounts of the disallowed deductions, should have been included in the amounts of profits distributed in the years 1937 and 1938, and the failure to do so created the penalty liaabilities prescribed by 26 U.S.C.A. Int.Rev. Code § 500.

Petitioner for many years prior to 1929 was engaged in the publishing business inter alia publishing a legal newspaper, the Los Angeles Daily Journal. It had three newspaper competitors in vigorous competition for several years prior to that date. In that year the four competing corporations entered into an agreement to consolidate their publishing businesses and formed a corporation, the "Consolidated Printing and Publishing Corporation," hereinafter called Consolidated, to publish the four papers. Each corporation was to continue in business and to hold shares in Consolidated. The propriety of the Consolidated's organization and purposes was approved by the California Corporation Commissioner, who issued its permit for the sale of its stock. Petitioner received 69 percent of Consolidated's Class A preferred, 65 percent of its Class B preferred, and 67 percent of its common stock.

Since, as later described, we view the deduction as properly taken, it is unnecessary to consider the character of petitioner with reference to the issue of the personal holding company surtax deficiencies.

The agreement for the formation of Consolidated provided that each of the contracting parties "will use their best efforts and endeavors to further and promote the business of said new corporation." The evidence is uncontradicted that it was specifically understood and agreed by all the parties that the new enterprise was to be managed by petitioner

acting, as a corporation must, through its agents, here through its president, Douglas W. Wilson, and that had this not been agreed to the consolidation would not have been effected.

Consistent with the intent of the parties as heretofore set forth, the Consolidated agreement specifically provided that the new enterprise would pay no salary to any officer without the consent of all the directors.

Pursuant to this agreement, petitioner, through its agent, its president, Mr. Wilson, managed the business of Consolidated during the tax years in question—Mr. Wilson acting as the president of the latter. All four papers were published under their former names. No salary was paid petitioner's president by Consolidated. The only salary for such management was paid by petitioner. Mr. Wilson received $12,000 a year from petitioner and it is agreed that the services so rendered by him were worth that amount. Petitioner deducted the $12,000 in each of the tax years as an ordinary business expense.

The Tax Court sustained the Commissioner's holding that but $2,000 of this amount was for services to petitioner and that the balance of $10,000 was not expended in petitioner's business but was in the nature of a further investment in Consolidated. The Tax Court's opinion ignores the Consolidated agreement that petitioner was to render such services to Consolidated as a consideration for the joining therein of the other contracting parties. In effect, it holds that where there are two distinct corporate entities, one corporation cannot claim as a business deduction managerial services which it has agreed to render and has rendered another —the one corporation doing no more than aiding in increasing its dividends from the other.

■ We do not agree. Petitioner was for years in the business of managing the publication of a newspaper and by agreement continued in the same business of newspaper management. It was engaged in the same character of business in the years after the consolidation as before. It did not cease that business because by agreement it managed the publication not only of the same newspaper it had previously managed, but of others. The salary paid to petitioner's agent, Wilson, was a usual and ordinary expenditure made in the course of the business in which petitioner

had been engaged for over twenty years and in which, in the tax years in question, it was engaged pursuant to an agreement so to do.

■ It would be an absurdity to hold that one person with long established skill in management is not engaged in managerial business, if by agreement he supplies that skill to another, here in vital need of it. Within the rule stated in Deputy v. Du Pont, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416, the skilled person may be regarded as holding himself "out to others as engaged in the selling of * * * services" and hence engaged in business.

In no sense can we consider petitioner so executing his agreement as a mere passive investor. Within the rule stated in our opinion in Miller v. Commissioner, 9 Cir., 102 F.2d 476, 480, petitioner's managerial activities in Consolidated were "extensive, varied, continuous and regular." Here an extensive publishing business was carried on by agreement, not a mere doing of "only what is necessary from an investment point of view" as in Kane v. Commissioner, 2 Cir., 100 F.2d 382, 383. It is not a case where "The petitioner merely kept records and collected interest and dividends from his securities, through managerial attention for his investments" as in Higgins v. Commissioner, 312 U.S. 212, 218, 61 S.Ct. 475, 478, 85 L.Ed. 783; United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231, and City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227.

Our view is in accord with the recent decision of the Fourth Circuit in Helvering v. Highland, 124 F.2d 556, also distinguishing Higgins v. Commissioner, supra. There an executor, who was also manager of a newspaper corporation publishing several papers, of which a majority of the stock was owned by his estate, was held engaged in business. The expenses incurred in connection with that business were held deductible from the income of the estate as ordinary and necessary business expenses, rather than mere expenses of administration deductible only from the estate tax.

Since petitioner was entitled to deduct the annual salaries from the years incomes returned in 1936, 1937 and 1938, there could be no failure of the petitioner to distribute their amounts in the two latter years, assuming petitioner to be a holding company.

We hold that the Tax Court erred in disallowing the deduction from petitioner's income of the entire salary of its president in the tax years in question and in confirming the Commissioner's deficiencies for such years in ordinary and personal holding company surtaxes.

Reversed.