ANDERS I. LAGREIDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ALICE LAGREIDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43610, 43611.   Filed December 22, 1954.

*Carl A. Jonson, Esq.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

OPINION.

FISHER, *Judge:* All of the facts have been stipulated and are herein incorporated by reference.

Petitioners are husband and wife who during the taxable years 1947 and 1949 resided in Kent, Washington. They filed separate income tax returns on a community property basis for the year 1947 and a joint return for the year 1949. All returns were filed with the collector of internal revenue for the district of Washington at Tacoma.

Petitioner Anders I. Lagreide owned and operated a sole proprietorship, doing business under the name of XL Products Company (hereinafter called the company) in Seattle, Washington. The business was profitable in 1947 and 1948. In the 1947 returns, the petitioners reported community income of $24,963.02 and claimed specific deductions totaling $1,261.01 for a net community income of $11,851 each. Each petitioner paid an income tax of $3,092.88, for that year, and $2,767.09 for the year 1948.

In 1949, the business showed a net operating loss of $2,040.17. Petitioners paid no income tax for that year.

On petitioners' joint return for 1949, they reported the following:

| | | |
|---|---:|---:|
| Salaries | | $684.25 |
| Gross rental receipts | $250.00 | |
| Less: Repairs | 20.00 | |
| | | 230.00 |
| Loss from saw filing and sales business | | (2,040.17) |
| Adjusted gross income | | (1,125.92) |
| Specific deductions | | 1,177.96 |
| Net loss | | $2,303.88 |

During a portion of the calendar year 1949, petitioner Alice Lagreide was employed as a teacher by the Washington Conference of Seventh Day Adventists in a school conducted by that church at Olympia, Washington. She received a salary of $684.25, which was reported on the joint return filed for the year 1949. In addition, during the calendar year 1949, Alice Lagreide owned a house located at Angwin, California, which she rented out during most of that year for a gross rental of $25 per month, yielding a net taxable rental in-

come of $230 after deduction for repairs. The rental income was reported on the joint return filed for the year 1949. The house had been inherited by Alice Lagreide from her mother in 1948, and also had been rented out by Alice for a part of the year 1948. Neither of the petitioners owned any other rental property.

On May 16, 1950, each petitioner filed Form 1045, Application for Tentative Carry-back Adjustment, claiming a decrease in 1947 tax in the amount of $465.42, resulting from a net operating loss carry-back from the year 1949. The overassessments were duly scheduled and refunds were made to the petitioners. The carry-back loss was computed as follows:

*Computation of Net Operating Loss Deduction*

| | | | |
|---|---|---|---|
| Net income (loss) per Form 1040 for the calendar year 1949— community | | | $2,303.88 |
| Deduct nonbusiness deductions | | $1,177.96 | |
| In excess of nonbusiness income from: | | | |
| Salary | $684.25 | | |
| Rents | 230.00 | 914.25 | 263.71 |
| Community net operating loss deduction | | | $2,040.17 |
| One-half | | | $1,020.09 |

Subsequently the respondent determined that the net operating loss sustained in 1949 was improperly computed and determined the deficiencies here appealed. The respondent asserts that the salary received by Alice Lagreide in 1949 and the rental income also received in 1949 (totaling $914.25) each constitutes income from the operation of a "trade or business regularly carried on," which should be applied to partially offset the business loss sustained in the operation of the company, the calculation being shown in the deficiency notice as follows:

| | |
|---|---|
| Business loss | $2,040.17 |
| Less: Business income | 914.25 |
| Net operating loss | $1,125.92 |

Section 23 (s) of the Internal Revenue Code of 1939 allows as a deduction in computing net income a net operating loss as computed under section 122. Under the latter section, the net operating loss is calculated by determining the excess of all deductions allowable by Chapter 1 of the Code over gross income with the exceptions, additions, and limitations provided in subsection 122 (d). Paragraph 5 of subsection 122 (d), where material, provides as follows:

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall * * * be allowed only to the extent of the amount of the gross income not derived from such trade or business.

Petitioners elected to file a joint income tax return for 1949. Neither section 23 (s) nor section 122 of the Internal Revenue Code contains provisions relating specifically to the treatment of net operating losses on joint returns. The situation, however, is covered in Regulations 111. Section 29.122–3 (e) provides as follows:

In the case of a husband and wife, the joint net operating loss for any taxable year for which a joint return is filed is to be computed upon the basis of the combined income and deductions of both spouses, and the exceptions and limitations prescribed by section 122 (d) are to be computed as if the combined income and deductions of both spouses were the income and deductions of one individual.

Section 29.122–5 provides, in part, as follows:

In the case of a husband and wife making a joint return for any taxable year, the computation of the net operating loss deduction (as set forth in the first paragraph of this section) is to be made upon the basis of the aggregate of the joint net operating loss carry-overs and joint net operating loss carry-backs of the spouses to such year (computed as prescribed in section 29.122–4 (e)) and the combined net income of the spouses.

See also section 29.122–4 (e).

We think that the foregoing regulations are reasonable. See *James H. Cunningham*, 20 T. C. 65 (1953). Their effect is that, in a joint return; the amount of a net operating loss must be computed as if the return were that of a single taxpayer, rather than that of two separate taxpayers. As applied to the instant case, to the extent that we may hold that the net income of Alice Lagreide from rents or from salary, or both, represents income derived from the operation of a trade or business regularly carried on, the amount so derived must be applied to reduce the net operating loss of the husband for carry-back purposes. Moreover, in arriving at the amount of such offset, no reduction may be allowed for any nonbusiness deductions. Sec. 122 (d) (5), *supra*.

The first issue to be considered is whether or not the renting out in 1949, by Alice Lagreide, of a single piece of residential real estate, amounted to the operation by her of a trade or business regularly carried on. She inherited the property from her mother in 1948 and never occupied or maintained it as her own residence. Since the time of the mother's death, the property was either rented or available for renting, and was actually rented during part of 1948 and almost all of 1949.

It is clear from the facts that the real estate was devoted to rental purposes, and we have repeatedly held that such use constitutes use of the property in trade or business, regardless of whether or not it is the only property so used. *Leland Hazard*, 7 T. C. 372 (1946). See also *Quincy A. Shaw McKean*, 6 T. C. 757 (1946) ; *N. Stuart Campbell*, 5 T. C. 272 (1945) ; *John D. Fackler*, 45 B. T. A. 708, 714 (1941), affd. (C. A. 6, 1943) 133 F. 2d 509. We add that the use of the property in trade or business was, upon the facts, an operation of the trade or business in which it was so used (see *Industrial Commission* v. *Hammond*, 77 Colo. 414, 236 Pac. 1006, 1008). It is clear, also, that the business was "regularly" carried on, there having been no deviation, at any time, from the obviously planned use.

We hold, therefore, that the net rents from the property in 1949 were derived from the operation of a trade or business regularly carried on by Alice Lagreide, which must be applied in full against the operating loss suffered by the husband's business in 1949 for carry-back purposes.

The remaining issue is whether Alice Lagreide, in her capacity as a salaried teacher in the year 1949, was operating a trade or business regularly carried on by her. If so, the income derived from teaching must likewise be applied in full against the operating loss incurred in the husband's business in 1949 in determining the net operating loss for carry-back purposes.

In essence, petitioners contend that teaching is not a trade or business and that even if it is, an employee on a salary basis cannot be deemed to operate a trade or business.

Respondent's determination is presumed to be correct, and the burden is upon petitioners to demonstrate error in such determination.

In *Hill* v. *Commissioner*, (C. A. 4, 1950) 181 F. 2d 906, the court expressly held that a teacher working on a salary basis was engaged in a trade or business by virtue of the performance of her services as such for compensation, and allowed the teacher to deduct those expenses which it deemed to be ordinary and necessary thereto.

In *Daily Journal Co.* v. *Commissioner*, (C. A. 9, 1943) 135 F. 2d 687, it was held that a corporate executive skilled in management was engaged in the selling of his services as such, and hence engaged in business. See also *Commissioner* v. *People's Pittsburg Trust Co.*, (C. A. 3, 1932) 60 F. 2d 187.

In *J. Rene Harris*, 22 T. C. 1118 (1954), we held that a salaried postmaster was engaged in business as an employee of the Post Office Department (at the same time disallowing certain expense deductions because of the specific provisions of section 22 (n) (1) of the Code).

Our review of the authorities discloses other expressions of view to the same general effect.

In the light of the foregoing, we cannot hold that Alice Lagreide, as a teacher, was not engaged in a trade or business within the meaning of section 122 (d) (5).

We think it clear that in performing her services as a teacher, Alice Lagreide was carrying on or conducting such business. Since the words "carry on" or "conducting" come within well recognized definitions of "operating," we must likewise hold that her salary was derived from the operation of such business.

As to whether the business was "regularly" carried on, the respondent's determination is prima facie correct, and we resolve the issue in his favor in the absence of evidence to the contrary.

In arguing that the compensation of Alice Lagreide for teaching was not business income, petitioners rely upon *Joe B. Luton*, 18 T. C. 1153 (1952). We have carefully reviewed our Opinion in that case. In view of the authorities already discussed herein, we have come to the conclusion that the Opinion in the *Luton* case was in error in holding that salary was nonbusiness income. We therefore decline to follow it in the instant case.

Petitioners also rely upon *James H. Cunningham, supra*. In that case, we held that a wife's salary from her husband's business reported on a joint return must be used to reduce her husband's operating loss and could not first be offset by nonbusiness deductions. The decision is fully consistent with our determination in the instant case. There is, however, language in the *Cunningham* Opinion to the effect that if the salary of the wife had been from some other source, the answer might have been different. It is clear, however, that the Court did not decide that issue, and the language in question, used for the limited purpose of distinguishing certain cases cited by the petitioner in the *Cunningham* case, is not here controlling.

In the light of the foregoing discussion we hold that the salary received by Alice Lagreide as a teacher in 1949 was derived from the operation of a trade or business regularly carried on by her, which must be applied in full against the husband's 1949 operating loss for carry-back purposes.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

MURDOCK, *J.*, dissenting: The principal question involved herein, a narrow one, was well settled by our decision in *Joe B. Luton*, 18 T. C. 1153, recently acquiesced in, and we should not vacillate. Anders sus-

tained a net loss in the operation of the XL Company, a sole proprietorship, in 1949. The net operating loss deduction claimed for 1947 stems from the 1949 XL net operating loss. The majority holds that there can be a net operating loss deduction for 1947 only to the extent that all of the business operations of Anders and his wife in 1949 resulted in a net operating loss, that is, that there must be combined with the XL business any other business which either spouse conducted and particularly the two alleged businesses which the wife is held to have conducted. The only authorities cited for this conclusion are provisions of the regulations. Those same provisions were quoted in *James H. Cunningham*, 20 T. C. 65, with the thought that they would not support the present holding. We there said:

The general effect of the statute is that a loss from the operation of a business is computed without regard to other items properly shown on the return which are not income from or deductions of that particular business, and then the operating loss is reduced to the extent that the other income on the return exceeds the other deductions. The deductions unrelated to the business thus have no effect upon the operating loss except to the extent that there is unrelated income for them to offset which would otherwise reduce the operating loss to be carried back.

The salary of the wife in that case was derived, however, from the husband's business and was held to be income of the spouses from that particular business. We said further:

If the salary of the wife had been from some other source, the cases cited by the petitioner would be in point, or if she had filed a separate return for 1949, the present question would not even arise.

The cases to which that last sentence refers were *Hughes* v. *Commissioner*, 38 F. 2d 755, and *Lawrence J. Montgomery*, 17 B. T. A. 1308, both of which dealt with somewhat similar language contained in section 204 (a) of the Revenue Act of 1921. They have not been distinguished in the majority opinion. See also *H. J. Schlesinger*, 5 B. T. A. 943. The *Luton* case held, I think properly, that salary of the petitioner from a business not connected with that in which the operating loss occurred should be treated as nonbusiness income first to be offset by nonbusiness losses under section 122 (d) (5) and only the excess used to reduce the net operating loss being computed. The use of the word "such" in section 122 (d) (5) supports that result. A study of the legislative history of the net loss carry-back provisions and consideration of the results of applying the one solution or the other to various sets of possible circumstances also convince me that the present result was not intended by Congress.

ARUNDELL, VAN FOSSAN, HARRON, and JOHNSON, *JJ*., agree with this dissent.