ELMER E. BATZELL AND EDNA MAE BATZELL (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59885.    Filed June 18, 1958.

*Edwin Jason Dryer, Esq.*, for the petitioners.
*William Schwerdtfeger, Esq.*, for the respondent.

Respondent determined a deficiency in petitioners' income tax for the calendar year 1951 in the amount of $747.32. The issue before us in this case is properly described in the stipulation filed herein as follows: If it should be held that the salary received by petitioner Elmer E. Batzell from the Petroleum Administration for Defense in 1952 constitutes business income within the meaning of section 122 (d) (5) of the Internal Revenue Code of 1939,[1] then petitioners' net operating loss carryback to 1951 and net operating loss deduction for 1951 would be in such amounts that their deficiency in income tax for 1951 would be in the amount determined by respondent, but if it should be held that such salary constitutes nonbusiness income within the meaning of the quoted section then the net operating loss carryback to 1951 and the net operating loss deduction for 1951 would be in amounts resulting in an overassessment in income tax for 1951 in the amount of $248.72.

### FINDINGS OF FACT.

The parties have filed herein a stipulation of facts and we incorporate herein by this reference the stipulation, together with the

---

[1] SEC. 122. NET OPERATING LOSS DEDUCTION.

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS. * * *

* * * * * * *

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection. This paragraph shall not apply with specified to deductions allowable for losses sustained after December 31, 1950, in respect of property, if the losses arise from fire, storm, shipwreck, or other casualty, or from theft.

exhibits attached thereto. In addition, other evidence was adduced at the trial of this case.

Petitioners are husband and wife residing in Washington, D. C. For 1951 and 1952 they filed joint income tax returns with the then collector of internal revenue at Baltimore, Maryland.

Since November 1945, with the exception of the period May 1, 1951, to August 31, 1952, petitioner Elmer E. Batzell (hereinafter referred to as petitioner) has been regularly engaged in the practice of law and in business and economic-consulting activities, in the course of which he has represented a number of oil companies, and has also devoted a part of his time to initiating and developing various business enterprises.

During the second World War petitioner served as an attorney in the Office of Petroleum Coordinator for Defense and Petroleum Administration for War.

In late 1945 and early 1946 petitioner was a consultant to the Surplus Property Administration and the Department of the Interior, among other clients. He was paid on a time or fee basis at an agreed rate in the same manner as for his other consulting work for the Government and private firms. Among other matters he assisted in drafting the organizational plans for the Oil and Gas Division of the Department of the Interior. Subsequently, from time to time, he was paid on a time or fee basis for other consulting work for other agencies of the Federal Government. At all such times such services were consultative in nature and did not preclude his working for other clients. With regard to his practice of law, petitioner opened offices in late 1946 for such practice associating himself with Norman L. Meyers, and was actively engaged in the practice of law thereafter except during the period May 1, 1951, to August 31, 1952. In 1950 he entered into a law partnership with Norman L. Meyers, known as Meyers & Batzell. In connection with petitioner's employment by the Petroleum Administration for Defense as related hereinafter, the partnership agreement was amended on April 15, 1951, by a supplementary agreement, which provided in part as follows:

1. This Agreement shall be effective for the period May 1, 1951–May 1, 1952.

2. During that time the provisions of the Partnership Agreement dated September 15, 1950, between the parties hereto which are inconsistent with the provisions of this Agreement shall be inoperative.

3. During the period mentioned in paragraph 1, ELMER E. BATZELL shall have no direct or indirect relationship or affiliation with the partnership MEYERS and BATZELL, and shall be entitled to no profits of the partnership earned during that period.

\* \* \* \* \* \* \*

7. During the period mentioned in paragraph 1, NORMAN L. MEYERS agrees to conduct the business of the partnership in the best interests of the partnership and to devote full time thereto, it being recognized that any profits

of the partnership earned during such period shall accrue in full to NORMAN L. MEYERS.

    &#42;        &#42;        &#42;        &#42;        &#42;        &#42;        &#42;

9. During the period specified in paragraph 1, neither party to this Agreement shall act in any way, as respects the other party or the partnership, as to involve the partnership or either partner to this Agreement in a conflict of interest.

Petitioner resumed the practice of law in September 1952 and had continued such practice up to the time of the trial of this case.

When hostilities in Korea broke out petitioner was asked by his friends, who were connected with the Department of the Interior and the Defense Production Authority, to perfect his drafted plan for the organization of an emergency national petroleum agency and to suggest qualified personnel for its staffing. This he attempted to do, while still maintaining his practice of law, by working during lunch hours and at night. On four occasions in 1951 petitioner was offered a salaried position with the Petroleum Administration for Defense, but refused because of his reluctance to make the professional and financial sacrifice which the acceptance of such a position would entail. He was also urged to accept such a position by the so-called independent oil producers. Finally, upon assurances given to him by the Secretary of the Interior that he would be given a position which paid a so-called super-grade salary as provided by section 710 (a) of the Defense Production Act of 1950, and that he would be expected to serve in such a position for only 1 year, petitioner accepted the position of Finance Counselor with the Petroleum Administration for Defense on May 1, 1951, and terminated his consulting services, legal and economic, for clients. It was agreed at that time that his period of employment would end April 30, 1952. This was in conformity with a policy of the Petroleum Administration for Defense to employ its key personnel with a definite understanding that their employment in the Government service would be for only a fixed and limited time except in unusual circumstances of emergency. Subsequently, he was designated Assistant Deputy Administrator and General Counsel of the Administration and the termination date of his service was extended to August 31, 1952. Petitioner's appointment was at grade 17 (and later grade 18) pursuant to section 710 (a) of the Defense Production Act of 1950, which provided as follows:

SEC. 710 (a).

The President, to the extent he deems it necessary and appropriate in order to carry out the provisions of this Act, is authorized to place positions and employ persons temporarily in grades 16, 17, and 18 of the General Schedule established by the Classification Act of 1949, and such positions shall be additional to the number authorized by section 505 of that Act.

The Petroleum Administration for Defense was established by Department of the Interior Order No. 2591 pursuant to the provisions of the Defense Production Act. That Act was expressly limited in its duration to June 30, 1951. The Act of June 30, 1951, then extended its duration to July 31, 1952. There were later extensions, but much of the Act expired in 1953. The Defense Production Act also contained a provision for termination of its authority at a date which might be earlier than the date set out in the Act, in the event of a concurrent congressional resolution or of a Presidential proclamation providing for such earlier termination.

For such employment, as a salaried employee at grade 17 and, later, at grade 18 (precluding his working for other persons), petitioner in 1951 received salary from the Administration in the amount of $8,065.62. He also received $171.50 as reimbursement for travel expense, but actually incurred travel expenses of $371.35. For 1952 he likewise received salary from the Administration of $12,629.86 and, in addition, $304.98 as reimbursement for travel expenses. However, he actually incurred travel expenses of $497.63. Petitioner's earnings in his private practice had been in excess of his salary as an employee of the Federal Government.

During the period from January 1, 1951, to April 30 of that year petitioner served as a consultant to the Petroleum Administration for Defense on a compensation-for-time basis which did not preclude his serving others. He received compensation for such services in the amount of $6,146.25. He also performed consulting services and received compensation on a time basis in 1950 incident to the establishment of the Petroleum Administration for Defense.

After terminating his employment with the Administration on August 31, 1952, when the basic petroleum problems connected with the Korean hostilities were at an end, petitioner returned to the practice of law with the firm of Meyers & Batzell, and to his general business activities, in which he has been engaged regularly ever since. In 1953 or 1954 the functions of the Petroleum Administration for Defense were taken over by the Department of the Interior.

If it should be held in this proceeding that the $12,629.86 compensation received from the Administration in 1952, less $192.65 representing unreimbursed travel expenses, constitutes business income within the meaning of section 122 (d) (5) of the 1939 Code, then the net operating loss carryback to 1951 shall be in the amount of $5,107.47, the net operating loss deduction for 1951 shall be in the amount of $4,653.56, and the deficiency in income tax for 1951 shall be in the amount determined in the notice of deficiency. If, however, it should be held that the $12,629.86 less the $192.65, constitutes nonbusiness income within the meaning of section 122 (d) (5), then the net operating loss carryback shall be in the amount

of $8,370.54, the net operating loss deduction for 1951 shall be in the amount of $7,916.63, and the overassessment in income tax for 1951 shall be in the amount of $248.72.

Petitioners filed their 1951 income tax return on June 17, 1952. Within 3 years thereafter and on April 1, 1955, petitioners and respondent entered into an agreement extending the period within which any income tax due for said year might be assessed to June 30, 1956. The deficiency notice herein was mailed to petitioners on July 18, 1955.

OPINION.

KERN, *Judge:* An employee on a salary basis is engaged in a trade or business within the meaning of section 122 (d) (5) of the Internal Revenue Code of 1939, and the salary of such employee is derived from the operation of that business. *Anders I. Lagreide,* 23 T. C. 508. See also *Folker* v. *Johnson,* 230 F. 2d 906. However, as petitioner stresses in his argument herein, section 122 (d) (5) is applicable to "[d]eductions * * * not attributable to the operation of" and "gross income not derived from" "a trade or business *regularly* carried on by the taxpayer." (Emphasis supplied.) Petitioner's principal point is that since his salary here involved was "temporarily derived from an emergency Federal agency in response to a call for the performance of patriotic duty," it cannot be considered as derived from an activity or "business regularly carried on by the taxpayer." See *Anders I. Lagreide, supra* at 513. In effect, petitioner argues that since his salaried employment was "temporary," it is not a business *regularly* carried on by him. This argument assumes that "temporary" is the antithesis of "regular."

We are not aware of any other section of the Internal Revenue Code in which the phrase "regularly carried on" is used. When this section was rewritten in the 1954 Code, the word "regularly" was omitted. We find no explanation in legislative history for either the use of the word in the 1939 Code or its omission in the 1954 Code. Nor is there any evidence in legislative history that Congress intended any special or peculiar meaning to attach to this word.

We therefore assume that Congress used this word in its generally accepted or "dictionary" sense. The word "regularly" is an adverb formed from the word "regular" which, according to Webster's New Collegiate Dictionary, is derived from the Latin word "regula" or "rule," and its pertinent meaning is defined as: "3. Steady or uniform in course, practice, etc.; not characterized by variation from the normal or usual; as, a *regular* pulse; *regular* habits." Its synonyms are listed as "normal," "typical," "natural," "methodical," "systematic," and "orderly." There is no indication in this definition that the word "regular" is equivalent to "permanent" or "indefinite in duration" or that one of its antonyms is the word "temporary."

We find nothing in the Internal Revenue Code, or in its legislative history, or in the dictionary, which would cause us to conclude that the employment of the petitioner by the Federal Government for a term of service estimated at 1 year (and actually exceeding that time) at an annual salary of the amount which he received did not constitute a business regularly carried on by him within the meaning of section 122 (d) (5).

Upon the facts of record, we decide the issue before us in favor of the respondent.

*Decision will be entered for the respondent.*