**Elmer E. BATZELL and Edna Mae Batzell (Husband and Wife), Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 7808.**

United States Court of Appeals
Fourth Circuit.

Argued March 17, 1959.

Decided April 15, 1959.

Edwin Jason Dryer, Washington, D. C., for petitioners.

Carolyn R. Just, Attorney, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before HAYNSWORTH, Circuit Judge, and BOREMAN and STANLEY, District Judges.

BOREMAN, District Judge.

This is a review of a decision of the Tax Court filed June 18, 1958, determining a deficiency in the petitioners' income tax for 1951 in the amount of $747.32 30 T.C. 648. For convenience, Elmer E. Batzell will be hereinafter referred to as the taxpayer although he and his wife, having filed joint returns for the years here considered, are joint petitioners.

The sole question presented is whether taxpayer's salaried temporary service with a federal agency constitutes "the operation of a trade or business regularly carried on by the taxpayer" within the meaning of Section 122 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 122. In the computation of the net operating loss deduction, Section 122 limits allowable non-business loss deductions to the amount of non-business income. Taxpayer undertook to treat the salary for his federal service as non-business income. Since he had incurred a substantial non-business loss in 1952, taxpayer had "carried back" part of this loss and claimed it as a deduction in his 1951 return. The Commissioner, however, has treated taxpayer's salary for federal service as business income, thus reducing the allowable deduction for non-business loss in 1952 which might be carried back to 1951. The *amount* of the deficiency has been stipulated and thus is not in issue.

Taxpayer is a lawyer and economic adviser specializing in matters concerning the petroleum industry. During World War II taxpayer had served as an attorney in the Office of Petroleum Coordinator for Defense and Petroleum Administrator for War, subsequently returning to his private practice. Upon the outbreak of hostilities in Korea, Batzell was persuaded to accept a high-salaried position in the Petroleum Administration for Defense, with the understanding that the employment would be for a period of one year only. The law firm in which he was a partner was dissolved and he was completely disassociated from any private law practice. The period of government employment actually extended from May 1, 1951, to August 31, 1952, at the end of which time he resumed the practice of law. For a more detailed statement of the facts and circumstances, see the opinion of the Tax Court.

Under these facts, the taxpayer contends that his temporary position with the federal government during 1951 and 1952 was not "a trade or business *regularly* carried on". (Emphasis supplied.) Since the decision in Anders I. Lagreide, 1954, 23 T.C. 508, it seems to be settled that salaried employees are occupied in the operation of a trade or business within the meaning of Section 122. Roberts v. Commissioner, 5 Cir., 1958, 258 F.2d 634; Pierce v. United States, 9 Cir., 1958, 254 F.2d 885; Overly v. Commissioner, 3 Cir., 1957, 243 F.2d 576; Folker v. Johnson, 2 Cir., 1956, 230 F.2d 906. However, no case has been called to our attention in which there was a determination of the question as to what was the sense and intent of Congress in inserting the word "regularly" in Section 122. Since there is no legislative definition of the term, it is agreed by both parties here that the word must be taken and construed in its generally accepted sense. See Folker v. Johnson, supra. Cf. United States v. Gilbert Associates, Inc., 1953, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. According to Webster's New Collegiate Dictionary (1953), the word "regular", from which "regularly" is derived, is appropriately defined as "steady or uniform in course, practice, etc." and "implies conformity to a rule, standard, or pattern". Taxpayer contends that the term must be construed in the light of taxpayer's entire career, and that the period in question during which he was temporarily employed by the federal government constituted a deviation from his regular business and profession.

It is the opinion of this Court, however, that the logical answer to the

 

question of congressional intent with which we are here concerned is that "regularly" applies, not with respect to the taxpayer's normal and intended life's work, but with respect to the period of time under consideration. Throughout the period from May 1, 1951, to August 31, 1952, the taxpayer "regularly" carried on the business for which he was hired by the federal government. During *that* period, working with the Petroleum Administration for Defense was his *regular* occupation, without regard to what constituted his regular, usual or normal business prior or subsequent to that period.

The decision of the Tax Court is, therefore,

Affirmed.