J. NAT and JENICE HAMRICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hamrick v. Commissioner
Docket No. 7250-75.
United States Tax Court
T.C. Memo 1979-72; 1979 Tax Ct. Memo LEXIS 454; 38 T.C.M. (CCH) 305; T.C.M. (RIA) 79072; March 5, 1979, Filed *454 (1) P, a 41-percent shareholder in a family corporation, sustained a loss upon the foreclosure and sale of a one-half interest in property that was being farmed by such corporation and that she had mortgaged to secure loans for the corporation. Held, such loss resulted from a nonbusiness debt becoming worthless during the year. (2) Since P acquired the property by gift, both parties agreed that P's basis in the property equaled its fair market value on Dec. 7, 1920. Held, such value determined. J. Nat Hamrick, pro se. Mathew E. Bates, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in income taxes and additions to tax of the petitioners: Additions
Sec. 6651(a)(1)
Sec. 6653(a) Year
Deficiencies
I.R.C. 1954 [1]
I.R.C. 1954
1970
$ 11,215.91
$ 1,121.59
$ 587.71
1971
14,595.49
1,459.55
759.02
1972
6,694.16
1,673.54
703.36
*457 The petitioners concede their liability for the additions to tax under sections 6651(a)(1) and 6653(a) with respect to any deficiency determined by the Court; the only issues remaining for decision are: (1) Whether the loss the petitioner sustained upon the foreclosure and sale of a one-half interest in property that she had mortgaged to secure loans to a corporation which farmed such property is deductible as a business bad debt under section 166; and (2) what was the fair market value of the property on December 7, 1920. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, J. Nat and Jenice Hamrick, are husband and wife who maintained their legal residence in Rutherfordton, N.C., when they filed the petition herein. They filed their joint Federal income tax returns for the years 1970 and 1971 with the Southeast Service Center, Chamblee, Ga.; their joint Federal income tax return for 1972 was filed with the Memphis Service Center, Memphis, Tenn. Mrs. Hamrick will sometimes be referred to as the petitioner. On December 7, 1920, the petitioner's father conveyed a 936-acre tract of land in Bamberg County, S. C., to the *458 petitioner's mother by deed of gift. The land, known as the Crum Place (the property), consisted of high quality farming land suitable for the growing of cotton, pecans, asparagus, cucumbers, and other crops. The property also included some 20 houses for the farm's workers, an overseer's home with six or seven bedrooms, a large barn, windmill, syrup mill, Lummus cotton gin, storage facilities and packing houses for the crops, a well for water, and a privately constructed and maintained telephone line. The farm also maintained some mules and livestock. On August 1, 1961, the petitioner's mother mortgaged the property, along with six other tracts of land, to secure a debt of Simon Brown's Sons, Inc. (the corporation). On October 30, 1963, the petitioner's mother conveyed a one-half interest in the property to the petitioner by deed of gift, reserving a life estate in herself. On September 28, 1964, the petitioner reconveyed her one-half interest in the property to her mother by deed of gift. On November 4, 1964, the petitioner's mother executed a new mortgage on the property to replace the mortgage of 1961. On November 27, 1964, the petitioner's mother reconveyed the one-half *459 interest to the petitioner subject to a life estate. In 1966, the petitioner again reconveyed her one-half interest in the property to her mother, and her mother executed a new mortgage to replace the earlier mortgages on the property; thereafter, she reconveyed the one-half interest to the petitioner. Later in 1966, the petitioner joined in the execution of a junior mortgage on the property to secure a loan to the corporation. In 1967, the petitioner joined in the execution of a new junior mortgage to replace the 1966 junior mortgage on the property and to secure additional loans to the corporation.From July 23, 1966 until October 1, 1970, the petitioner and her brother owned the property jointly as tenants in common subject to a life estate in their mother. From 1963 to 1972, the petitioner was a shareholder in the corporation, which was a family corporation. The capital stock of the corporation was owned as follows: [SEE TABLE IN ORIGINAL] Zelma Brown is the petitioner's mother; D. Stanley Brown is the petitioner's brother, who ran the corporation and earned his living by such work. Under an informal arrangement, the owners of the property allowed the corporation to *460 farm the property. The corporation owned all the necessary farming equipment, provided all the seed, fertilizer, labor, and supervision for the farm, and marketed all the crops from the property. During the years in issue, the petitioner received no rent from the corporation for the use of the property. However, she did receive pecans and other food from the corporation. On October 1, 1970, the junior mortgage on the property was foreclosed upon, and the mortgagee purchased the property at the foreclosure sale for $ 200,000. In their tax return for 1970, the petitioners deducted an ordinary loss of $ 170,000 attributable to the petitioner's loss of her one-half interest in the property and carried forward a net operating loss of $ 38,898 to 1971. Schedule D of such return included the statement: "Land placed as collateral on loan for brother's business. Loan not repaid and business bankrupt. Land was seized by referee to cover part of loss. Is ordinary loss under bad debt heading." In his notice of deficiency, the Commissioner reduced the petitioner's adjusted basis in the property to $ 32,180. He also determined that the petitioners realized a long-term capital loss *461 of $ 32,180, subject to the limitation of section 1211, and that there was no net operating loss to carry forward to 1971. OPINION The first issue to be decided is whether the petitioner sustained an ordinary loss as a result of the foreclosure on her interest in the property. There is some confusion as to the petitioners' position in this case. [2] On their return, they referred to the loss as a bad debt; but in their petition and in their brief in this case, they referred to it as a loss incurred in the carrying on of a trade or business within the meaning of section 165(c)(1), although they rely on cases dealing with claims for bad debt deductions. The Commissioner, at trial and in his brief, now maintains that the loss must be treated as a nonbusiness bad debt. *462 Section 165(a) allows a deduction for any loss sustained during the taxable year that is not compensated for by insurance or otherwise, but section 165(c) limits the deductions allowable to individuals. Section 165(c)(1) allows an individual a deduction for a loss incurred in a trade or business. However, the deduction for bad debts is set forth in section 166(a), which allows a deduction for a debt which becomes worthless during the taxable year. The loss in this case was not sustained upon the foreclosure and sale of the property. The Supreme Court held in Putnam v. Commissioner,352 U.S. 82 (1956), that a loss sustained by a guarantor unable to recover from the debtor is a loss from a bad debt to which the guarantor becomes subrogated upon discharging his liability as guarantor. By mortgaging her property to secure the loans, the petitioner was in effect placing her property as collateral for the loans and acting as a guarantor of the loans. The petitioner then became subrogated to the debt between the corporation and its creditors upon the foreclosure and sale of the property, and the loss she sustained when she was unable to recover from the corporation was *463 a bad debt loss deductible under section 166. Moreover, in Spring City Foundry Co. v. Commissioner,292 U.S. 182 (1934), the Supreme Court held that the predecessors of sections 165 and 166 are mutually exclusive; that is, a bad debt, although a loss, cannot be deducted under the general loss provisions of section 165. Therefore, we must hold that the loss the petitioner sustained upon the foreclosure and sale of her interest in the property is not deductible as a business loss under section 165(c)(1). Section 166(d) provides: (d) Nonbusiness Debts.-- (1) General rule.--In the case of a taxpayer other than a corporation-- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than-- (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
*464 (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. Thus, we must decide whether the petitioner's claim against the corporation was a business or a nonbusiness debt within the meaning of section 166(d). Section 1.166-5(b), Income Tax Regs., defines nonbusiness debts: (b) Nonbusiness debt defined. For purposes of section 166 and this section, a nonbusiness debt is any debt other than-- (1) A debt which is created, or acquired, in the course of a trade or business of the taxpayer, determined without regard to the relationship of the debt to a trade or business of the taxpayer at the time when the debt becomes worthless; or (2) A debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. The question whether a debt is a nonbusiness debt is a question of fact in each particular case. The determination of whether the loss on a debt's becoming worthless has been incurred in a trade or business of the taxpayer shall, for this purpose, be made in substantially the same manner for determining whether a loss has been incurred in a trade or business for purposes of section 165(c)(1). For *465 purposes of subparagraph (2) of this paragraph, the character of the debt is to be determined by the relation which the loss resulting from the debt's becoming worthless bears to the trade or business of the taxpayer. If that relation is a proximate one in in the conduct of the trade or business in which the taxpayer is engaged at the time the debt becomes worthless, the debt comes within the exception provided by that subparagraph. * * * [Emphasis supplied.] In United States v. Generes,405 U.S. 93 (1972), the Supreme Court held that in determining whether a bad debt has a "proximate" relation to the taxpayer's trade or business within the meaning of the regulations, we must consider the taxpayer's "dominant motivation" for extending the loan. 405 U.S. at 103. In that case, a 44-percent shareholder in a family corporation deducted loans he made to the corporation as a business bad debt, claiming that such loans were made for business reasons, that is, to preserve his salary as president of the corporation. The Supreme Court said: We conclude on these facts that the taxpayer's explanation falls of its own weight, and that reasonable minds *466 could not ascribe, on this record, a dominant motivation directed to the preservation of the taxpayer's salary as president of Kelly-Generes Construction Co., Inc. [405 U.S. at 107.] The petitioner contends that she sustained an ordinary business loss upon the foreclosure and sale of her interest in the property. She asserts that the operation of the property was her "only business," but also states that she could not operate the property without the corporation. Yet, the corporation could not finance the business without the funds provided by the mortgaging of the property. Therefore, the petitioner concludes that the mortgaging of the property and the resultant foreclosure and loss were for business reasons. However, after consideration of all the evidence, we cannot conclude that the petitioner's dominant motivation for mortgaging the property, and subsequent subrogation to the claims against the corporation, was for business reasons.
The phrase "trade or business," as used in the Federal tax laws, has a "common and well-understood connotation as referring to the activity or activities in which a person engages for the purposes of earning a livelihood." *467 Folker v. Johnson,230 F. 2d 906, 907 (2d Cir. 1956). The petitioner has the burden of proving that her claim against the corporation qualified as a business debt. Rule 142, Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); see Scifo v. Commissioner,68 T.C. 714, 723 (1977). She does not allege that she was engaged in the business of farming the property, or that she was a farmer in general. The business of farming the property was conducted by the corporation and was not her individual business. Moreover, even though the petitioner was a 41-percent shareholder of the stock of the corporation that farmed the land, the business of the corporation is not attributable to her. It is a well settled principle that a shareholder has a separate identity from the corporation and that the business of a corporation is not the business of its shareholders or officers. Burnet v. Clark,287 U.S. 410 (1932); Dalton v. Bowers,287 U.S. 404 (1932); *468 Omaha Nat. Bank v. Commissioner,183 F. 2d 899 (8th Cir. 1950), affg. a Memorandum Opinion of this Court. Mere participation in a corporation by owning stock does not place one in the business of the corporation. Even devoting one's time and energies to the affairs of a corporation is not of itself, without more, the trade or business of the person so engaged. Whipple v. Commissioner,373 U.S. 193, 202 (1963). If the funds secured by the mortgages enabled the corporation to prosper, the petitioner might share in the profits as a shareholder of the corporation, but in that event, the loans merely enhance her dividends. Therefore, we hold that the petitioner has failed to show that the claim was a business debt because of her interest in the corporation. Nor has the petitioner shown that the debt was proximately related to her interest as an alleged lessor of the property to the corporation. This Court has stated that ordinarily the rental of property constitutes a trade or business. Lagreide v. Commissioner,23 T.C. 508 (1954); *469 Hazard v. Commissioner,7 T.C. 372 (1946). We recognize that it is not always necessary to show the actual receipt of rental income to establish that one is engaged in the trade or business of renting property. See, e.g., Crawford v. Commissioner,16 T.C. 678 (1951). However, the nominal renting of property does not convert it into business use, and the courts have generally looked to the taxpayer's expectation of receiving a profit from the rental of property. See Johnson v. Commissioner,19 T.C. 93 (1952); Crawford v. Commissioner,supra.Here, the petitioners admitted that they received no rental income from the property during the years in issue, and they failed to prove that they ever received any rental income from the property. Accordingly, we must conclude from the evidence presented that the "renting" here was nothing more than nominal and that the petitioner had no expectation of receiving a profit. In addition, the petitioner has offered no evidence that there was any real leasing arrangement with the corporation. She has not introduced the terms of any lease with the corporation, the duration, *470 if any, of a lease, nor evidence as to the amount the corporation would pay her under the arrangement. Mr. Hamrick testified that "if there was any surplus money, she could get it." Such an informal arrangement does not place the petitioner in the trade or business of renting the property to the corporation. Indeed, an examination of all the facts and circumstances suggests that the petitioner allowed the corporation to farm her one-half of the property as an accommodation to her brother in order to preserve his job with the corporation. Mr. Hamrick testified that "We had no alternative to this, because Stanley Brown had no way to live except running Simon Brown's Sons * * *." On this record, we hold that since the petitioner was not engaged in either the trade or business of farming or renting the property, the loss she sustained upon the uncollectibility of the loans to which she was subrogated was a nonbusiness bad debt. [3]
The second issue for consideration *471 is the fair market value of the property on December 7, 1920. Since the petitioner received the property as a gift from her mother, her basis in the property is determined under section 1015. Section 1015(a) provides: (a) Gifts after December 31, 1920.--If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period before the date of the gift as provided in section 1016) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. If the facts necessary to determine the basis in the hands of the donor or the last preceding owner are unknown to the donee, the Secretary shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Secretary finds it impossible to obtain such facts, the basis in the hands of such donor or last preceding owner shall be the fair market value of such property as found by the Secretary as of the date or approximate *472 date at which, according to the best information that the Secretary is able to obtain, such property was acquired by such donor or last preceding owner. The parties have agreed that the petitioner's basis in the property should be determined by the property's fair market value on December 7, 1920. The Commissioner determined that the value of the property on December 7, 1920, was $ 85 per acre. He based this determination on the report of a valuation expert. In preparing his report, such expert spent 3 days in the area in which the property is located. He inspected the subject property, looked at other property in the general area, and talked with soil conservation specialists about soil studies they had just completed on the land. He then examined records of sales of farm land in the area from 1919 to 1922. The expert used about 13 comparable sales to determine that the fair market value of the property in this case in 1920 was $ 85 per acre. One sale he considered was of a tract of land on the left border of the property that was sold on February 7, 1920, for $ 85 per acre. The expert recognized that the land on that property was very good and equal to the land on the subject *473 property for the production of cotton. In some of the comparable sales, the land was sold for as little as $ 50 per acre. In reaching his conclusion, the expert did not include any amount for the improvements on the property. The petitioner asserts that the fair market value of the land on December 7, 1920, was at least $ 250 per acre, and she contests the Commissioner's value on the ground that his expert failed to consider all the relevant facts in arriving at his estimate. Particularly, she contends that the Commissioner's expert failed to take into consideration the quality of the land on the subject property, the size of such property, and the extensive improvements thereon. To support her position, the petitioner called two witnesses, one of whom expressed the view that the property was worth $ 250 per acre in 1920. Such witnesses also testified as to the quality of the property and the improvements thereon. However, neither witness had any expertise in valuing land, nor did either support his opinion by reference to comparable sales in the area. In this case, we are impressed by the opinion of the Commissioner's expert.He was qualified to express an opinion on the *474 value of land, and his opinion was based on a thorough and careful analysis of comparable sales in the area--a generally accepted method of valuing land. Crane v. Commissioner,49 T.C. 85, 94-95 (1967); Huron Building Co. v. Commissioner,15 B.T.A. 1107, 1114 (1929), affd. sub nom. Tracy v. Commissioner,53 F. 2d 575 (6th Cir. 1931), cert. denied 287 U.S. 632 (1932). His opinion appears to have taken into consideration both the quality of the property and its size. On the other hand, the petitioner's witnesses lacked expertise, and their opinions were not grounded on objective facts. The most significant difference of opinion involved the treatment of the improvements. Under section 1016, the basis of the property must be adjusted to take into consideration any depreciation allowed or allowable on those improvements. See Pittsburgh Terminal Corp. v. Commissioner,60 T.C. 80, 87 (1973), affd. in an unpublished opinion 500 F. 2d 1400 (3d Cir. 1974); *475 Moorhead & Sons, Inc. v. Commissioner,40 T.C. 704, 713 (1963). The Commissionr determined that all such improvements would be fully depreciated by 1970, and the petitioner has presented no evidence to indicate otherwise.Accordingly, the Commissioner's expert was correct in basing his opinion on the value of the land without taking into consideration any improvement thereon, and since it is clear that the petitioner's witnesses included the value of the improvements in their opinions, such fact provides another reason for not accepting their opinions. In conclusion, we find and hold that the value of the property on December 7, 1920, was $ 85 per acre. In his notice of deficiency, the Commissioner determined the total value of the petitioner's interest in such property to be $ 32,180. However, his expert found that the total value of her interest was $ 39,780, and in his brief, the Commissioner adopted such value. Thus, in their computations for decision in accordance with Rule 155, Tax Court Rules of Practice and Procedure, the parties should use the figure of $ 39,780 as the basis of the petitioner's interest in the property. Decision will be entered under *476 Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. It is clear that the petitioners are not claiming that the loss was deductible under sec. 165(c)(2)↩ as a loss incurred in a transaction entered into for profit, or that the loss was deductible under sec. 212 as an expense incurred for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.
3. The Commissioner did not argue that the foreclosure and sale of the property was a taxable transaction. See Helvering v. Hammel,311 U.S. 504↩ (1941). Therefore, we give no consideration to that issue.