COOPER TIRE & RUBBER COMPANY EMPLOYEES' RETIREMENT FUND, W. ROBERT BREWER, R. HENRY DAVIS, AND B. E. ESTERLY, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84279.    Filed April 17, 1961.

*James F. Kennedy, Jr., Esq.*, for the petitioner.
*Henry T. Nicholas, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax for the years 1956 and 1957 in the respective amounts of $2,602.55 and $1,783. 84.

Petitioner is an employees' trust, and the issue is whether the rental income it received under a lease of 20 machines is subject to the tax imposed by section 511 of the Internal Revenue Code of 1954[1] on unrelated business taxable income.

All of the facts were stipulated and they are found accordingly.

Petitioner was an exempt employees' retirement trust as described in sections 401(a), 501(a), and 511(b) (2) of the Internal Revenue Code of 1954 during the years 1956 and 1957.

Petitioner was created on December 31, 1953, by the Cooper Tire & Rubber Company (hereinafter referred to as the company) and con-

---

[1] All section references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

tributions have been made to petitioner by said company under a profit-sharing formula.

People's First National Bank and Trust Company, Pittsburgh, Pennsylvania, was trustee of petitioner during the year 1956 but received no compensation for services rendered during said year.

W. Robert Brewer, Bruce E. Esterly, and R. Henry Davis, all salaried executives of the Cooper Tire & Rubber Company, served as trustees of petitioner during the year 1957 and received no compensation for their services as trustees.

On August 3, 1955, the company tendered an offer to the bank as trustee of petitioner, proposing that the trustee purchase certain equipment needed by the company for its manufacturing operations in consideration of which the company would enter into a 10-year lease of the machines at stipulated yearly rentals. This offer was accepted by the trustee on August 3, 1955, and, concurrently therewith, the company and the trustee entered into the proposed lease agreement.

Petitioner purchased from the McNeil Machine and Engineering Company, 20 Bag-O-Matic Tire manufacturing machines and one M. G. Press at a total cost of $344,830. The trustee borrowed $200,000 of the purchase price at 4 percent interest from the National City Bank of Cleveland, Ohio, secured by a chattel mortgage on the machines.

The lease provided the lessee had the burden of the expense of installing the machines, and it assumed all responsibility for performance of the machines for the purpose intended. The lessee was to pay all taxes levied against the machines and costs of repair or replacement and keep the machines insured against loss by fire or windstorm.

In accordance with the terms of the lease agreement, the Cooper Tire & Rubber Company obligated itself to pay petitioner rentals, as follows:

| | | | |
|---|---|---|---|
| First year | $69,600 | Sixth year | $32,400 |
| Second year | 59,400 | Seventh year | 29,400 |
| Third year | 50,400 | Eighth year | 26,400 |
| Fourth year | 42,000 | Ninth year | 24,000 |
| Fifth year | 35,400 | Tenth year | 22,200 |

In accordance with the terms of the lease, petitioner would have recovered its entire investment plus some additional income by the end of the original 10-year term of the lease.

The lease agreement gives the Cooper Tire & Rubber Company the option to extend the lease for 5-year periods for an annual rental of $10,344.90.

The lease agreement also gives the Cooper Tire & Rubber Company the option to purchase the rented machinery during the original term of the lease at a price equal to the purchase price, plus 6 percent inter-

est per annum on petitioner's total investment, less rentals paid to the date of purchase. At the end of the 10-year term of the lease, the Cooper Tire & Rubber Company has the option to purchase the machinery at a price equivalent to the then-depreciated value in accordance with the schedule of depreciation set forth in schedule B to the lease agreement.

In accordance with the terms of the lease, the Cooper Tire & Rubber Company made rental payments to petitioner in the years 1956 and 1957 in the respective amounts of $67,900 and $54,700, which petitioner did not report for tax but which the Commissioner determined to be "unrelated business taxable income." In computing deficiencies, respondent took into account interest and depreciation and other undisputed amounts.

Petitioner is an employees' trust within the provisions of section 401(a) and as such it is exempt from tax under section 501(a), except that it is liable for the tax imposed by section 511 upon "unrelated business taxable income" as defined in section 512.

Section 512 provides, in part, as follows:

SEC. 512. UNRELATED BUSINESS TAXABLE INCOME.

(a) DEFINITION.—The term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the exceptions, additions, and limitations provided in subsection (b). * * *

(b) EXCEPTIONS, ADDITIONS, and LIMITATIONS.—The exceptions, additions, and limitations applicable in determining unrelated business taxable income are the following:

\*          \*          \*          \*          \*          \*          \*

(3) There shall be excluded all rents from real property (including personal property leased with the real property), and all deductions directly connected with such rents.

(4) Notwithstanding paragraph (3), in the case of a business lease (as defined in section 514) there shall be included, as an item of gross income derived from an unrelated trade or business, the amount ascertained under section 514(a)(1), and there shall be allowed, as a deduction, the amount ascertained under section 514(a)(2).

Section 513 provides, in part, as follows:

SEC. 513. UNRELATED TRADE OR BUSINESS.

(a) GENERAL RULE.—The term "unrelated trade or business" means, in the case of any organization subject to the tax imposed by section 511, any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 (or, in the case of an organization described in section 511(a)(2)(B), to the exercise or performance of any purpose or function described in

section 501(c)(3)), except that such term does not include any trade or business—

(1) in which substantially all the work in carrying on such trade or business is performed for the organization without compensation; or

(2) which is carried on, in the case of an organization described in section 501(c)(3) or in the case of a college or university described in section 511(a)(2)(B), by the organization primarily for the convenience of its members, students, patients, officers, or employees; or

(3) which is the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions.

(b) SPECIAL RULE FOR TRUSTS.—The term "unrelated trade or business" means, in the case of—

(1) a trust computing its unrelated business taxable income under section 512 for purposes of section 681; or

(2) a trust described in section 401(a) which is exempt from tax under section 501(a);

any trade or business regularly carried on by such trust or by a partnership of which it is a member.

Respondent determined the rental income petitioner received during 1956 and 1957 from its leased machines constituted unrelated taxable business income. Petitioner contends it was not business income. Petitioner concedes that if it be held its leasing of machines was engaging in a "trade or business" then the rental income received was unrelated. The concession might be superfluous for it would seem in the case of a trust "any trade or business regularly carried on by such trust" would be an unrelated trade or business. Sec. 513(b)(2). Petitioner's contention on brief is "that the rental income in question was received by it as a return upon passively invested capital and not as a result of petitioner's operation of a trade or business."

We are convinced a proper interpretation of the statutes dealing with unrelated income and the underlying legislative history of those statutes clearly indicate such rental income from the leasing of personal property as is here involved, shall be taxed. To begin with it is significant that section 512 first states in subsection (a) the general definition of "unrelated business taxable income" as meaning the gross income derived from any unrelated trade or business and then, in subsection (b), lists exceptions, amongst them being (b)(3) which excludes "all rents from real property (including personal property leased with the real property)." Here we have the statute specifically excluding from unrelated business income, rentals from real property and rentals from personal property when "leased with real property" but silent as to such exclusion when only the personal property is leased. That the omission of personal property rentals from the exclusion statute was deliberate is shown by the legislative history of the statute. The Senate Finance Committee report, in discussing section 422 of the Internal Revenue Code of 1939 (which was the

antecedent section of section 512), stated: "Income received from a business of renting personal property is excluded under section 422(a)(3) only if the personal property is leased with real property." (S. Rept. No. 2375, 81st Cong., 2d Sess., 1950–2 C.B. 483, 560.)

It is also significant that Congress did not give an unlimited exclusion of realty rentals. An exception was made (sec. 512(b)(4)) in the case of a "business lease" as defined in section 514. The latter section defines a "business lease" of realty as one for a term of more than 5 years on which there is an indebtedness incurred in acquiring the property so leased. Here the lease of petitioner's machines is for more than 5 years and it borrowed the major portion of the purchase price to acquire them. Thus, if petitioner's position were correct it would mean rentals from personal property would be excluded from unrelated income, while rentals from real property would be included in unrelated income under identical types of lease agreements.

Petitioner seems to recognize the foregoing analysis of the statutes and legislative history would support a conclusion that income from a *business* of renting personal property would not be excluded from unrelated business income but petitioner argues section 513(a) in defining the term "unrelated trade or business" only defines what is meant by "unrelated" and not what is meant by the term "trade or business."

With no definition of the term "trade or business" present in the statute, petitioner feels free to argue that its single leasing venture, where it emerges with practically no duties but to collect the rentals, does not possess the characteristics of what is ordinarily considered to be a trade or business; that the ordinary and generally accepted concept of a trade or business denotes the carrying on of activity and it is bottomed on productive activity and such activity is not present in this case.

The same Senate Finance Committee report, previously cited, states: "As used in this section, the term 'trade or business' has the same meaning as it has elsewhere in the Code, as, for example, in section 23(a)(1)." (I.R.C. 1939.) The latter section is now section 162 in the Internal Revenue Code of 1954 and respondent's regulation states: "As used in section 512(a) * * * the term 'trade or business' has the same meaning as it has in section 162." Sec. 1.513–1(a)(1), Income Tax Regs. The latter section deals with trade or business expenses and it does not undertake to define the term *trade or business*. However, it is clear section 162 and its predecessor section 23(a), I.R.C. 1939, have been applied so as to include the leasing of improved real property as within the term "trade or business"—even though only one piece of rental property was involved. *E. L. Potter*, 20 B.T.A. 252, *George S. Jephson*, 37 B.T.A. 1117, *Anders I. Lagreide*, 23 T.C. 508, and *Reiner v. United States*, 222 F. 2d 770.

We are not referred to any cases involving renting of personalty, where the inquiry was as to engagement in trade or business, and we have found none. It would seem, however, the answer would be governed by the same considerations and conclusions of the above-cited cases involving renting of realty. This is especially true when the inquiry is made under the present statute where rents from realty are mentioned in section 512 where *business* income is the subject of the act.

Petitioner was not a mere passive investor when it borrowed $200,000 and bought $344,830 worth of machinery for rental purposes. Petitioner likens its venture to an investment in corporate securities and cites *Higgins* v. *Commissioner*, 312 U.S. 212. But there is a distinction between an investment in securities and an investment in tangible personal property such as machines. Nothing further need be done in the case of an investment in securities in order to realize income but further action is required in the case of an investment in machines. They will produce no income unless used, rented, or sold. The amount of money invested, the manner in which petitioner purchased the industrial machinery (with a $200,000 loan), and the many years the leasing activity is to cover, all point to petitioner's entering a business activity.

These statutes were directed primarily at the problem of unfair competition by tax-exempt organizations. H. Rept. No. 2319, 81st Cong., 2d Sess., 1950–2 C.B. 380, 409. Without such a tax the tax-exempt organization could engage in businesses such as purchasing property for leasing and lease for lower rates than others who are not tax exempt. The business of renting industrial machinery is probably not as widespread as the business of renting realty but we know it exists. It would thwart the very purpose of the statute to permit tax-exempt organizations to engage in such business, on an untaxed basis, in competition with other taxpayers engaged in the same business.

We hold for respondent on the issue. Petitioner's leasing activity was a "trade or business regularly carried on by such trust" within the meaning of section 513(b)(2). Its rental income was, therefore, unrelated business income within the provisions of section 511.

Petitioner makes an alternative argument that even if it were engaged in an unrelated trade or business, such business comes within the exclusion of section 513(a)(1) in that neither the trustees nor any other person received compensation for services to the trust.

Section 513(a) has no application to a trust. It merely sets out the "General Rule" applicable to any *organization* subject to the tax and in paragraphs (1), (2), and (3), some exclusions therefrom.

Petitioner must look to the next section 513(b) or the "Special Rule for Trusts" for the applicable meaning of the term "unrelated trade

or business." There we find it is "any trade or business regularly carried on by such trust" (sec. 513(b) (2)) and there are no exclusions. Without holding its unrelated business of leasing machinery was carried on without compensation we hold the exclusion of section 513 (a) (1) was not available to petitioner.

*Decision will be entered for the respondent.*