T.C. Memo. 2013-29

UNITED STATES TAX COURT

ZAGFLY, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1494-12X.　　　　　　　　Filed January 28, 2013.

M. Renee Orth (an officer), for petitioner.

<u>Mark Alan Weiner</u>, <u>Victoria A. Judson</u>, <u>Kirk M. Paxson</u>, and

<u>Patricia P. Wang</u>, for respondent.

MEMORANDUM OPINION

GUY, <u>Special Trial Judge</u>:  Zagfly, Inc. (petitioner), submitted to

respondent an application for recognition of exempt status under section

[*2] 501(c)(3).[1]  After exhausting its administrative remedies, petitioner filed a

petition with the Court pursuant to section 7428(a) seeking a declaratory judgment

that it qualifies as an organization described in section 501(c)(3) that is exempt from

Federal income taxation pursuant to section 501(a).[2]

The parties submitted this case to the Court for decision on the basis of the

pleadings and the parties' stipulation as to the administrative record.  See Rules 122,

217(b)(1).

Background

Petitioner was organized as a California nonprofit corporation in March

2010.  Petitioner's articles of incorporation state in part:  "The specific purpose of

this corporation is to establish Internet platforms that will enable the general

public to direct the proceeds of their activities to charitable causes."  M. Renee

Orth is petitioner's president and chief executive officer.  Petitioner has delayed

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner invoked the Court's jurisdiction pursuant to sec. 7428(a)(2) and (b)(2), which permits an organization to initiate a declaratory judgment action if the Commissioner fails to make a determination within 270 days after an application for exemption is filed.  See Rule 210(c)(1).

**[*3]** commencement of operations pending a final determination regarding its exempt status under section 501(a).

Petitioner plans to engage in an Internet-based business selling goods and services. Initially, petitioner intends to create a Web site and sell flowers as part of an established network of florists.[3] As a flower broker, petitioner anticipates that it will earn a sales commission of approximately 10% to 20% of the purchase price of the flowers it sells. Petitioner's Web site will feature approximately 40 different floral arrangements for purchase and delivery, and it expects to sell flowers at market rates, i.e., the price offered by other vendors participating in the florist network.

When customers purchase flowers from petitioner, they will be able to designate a charitable organization, from a list of organizations approved by petitioner, to receive all of the profit arising from the transaction.[4] Petitioner will approve an organization to receive a share of its profits only if the organization is exempt under section 501(c)(3). If this business model is established and viable,

---

[3]Petitioner identified Bloomnet and FTD as two of the largest florist networks.

[4]Petitioner's bylaws state in relevant part: "[W]e partner with charitable organizations that pursue sustainable solutions that work in harmony with nature to improve the well being of humanity and the environment of which we are a part. Ultimate authority for partnership decisions is vested in the Board."

**[*4]** petitioner hopes to expand its Web site offerings to include travel reservation services.

Petitioner plans to begin operations with an all volunteer workforce. However, assuming its business model is viable, petitioner intends to pay its employees reasonable salaries. Petitioner indicated that it would "suggest that our users allocate a small percentage (10% to 20%) of the profits (i.e., 1% to 2% of the purchase price) from their flower purchase to supporting our nonprofit. If we find that our users are not inclined to voluntarily elect to allocate funds to our organization, then we may need to include our operating expenses in determining the 'profit' that goes to the charitable cause of our users' choice". Petitioner's "goal is to cover all operating costs with philanthropic donations so that all user generated revenue * * * can be directed to the charitable causes our users wish to support."

Petitioner provided respondent with the following schedule projecting revenues and operating expenses for the years indicated:

[*5]                 Projected Statement of Revenues and Expenses

December 2010 through November 2013

| Revenue | 12/10-11/11 | 12/11-11/12 | 12/12-11/13 |
|---|---|---|---|
| Gross sales (commissions) | $6,500 | $8,000 | $12,500 |
| Gross receipts | 6,000 | 9,000 | 12,500 |
| **Operating Expenses** | | | |
| Internet-related expenses | 480 | 480 | 480 |
| Florist network dues | 400 | 400 | 400 |
| Occupancy | -- | -0- | -0- |
| Compensation of officers, directors, and trustees | -0- | -0- | -0- |
| Other salaries and wages | -0- | -0- | -0- |
| Advertising | 1,300 | 1,360 | 1,875 |
| Fundraising expenses | -0- | -0- | -0- |
| Disbursements to or for the benefit of members | 3,820 | 6,760 | 9,745 |
| Total expenses | 6,000 | 9,000 | 12,500 |

Brokering sales of flowers between consumers and florists is an activity ordinarily carried on by commercial enterprises. Petitioner acknowledges it will be "a newcomer in a saturated market", and it will be in direct competition with commercial flower brokers.

**[*6]**                              Discussion

A.  <u>Declaratory Judgment</u>

Petitioner commenced this declaratory judgment action pursuant to section 7428(a)(2) seeking a determination with respect to its initial qualification as a tax-exempt organization.  <u>See</u> Rules 210-218.  The Court may issue a declaratory judgment in this case inasmuch as respondent failed to make a determination within 270 days of the date petitioner filed its application for exemption and petitioner otherwise exhausted its administrative remedies.  <u>See</u> sec. 7428(b)(2); Rule 210(c); <u>B.H.W. Anesthesia Found., Inc. v. Commissioner</u>, 72 T.C. 681 (1979); <u>Nat'l Paralegal Inst. Coal. v. Commissioner</u>, T.C. Memo. 2005-293.

Disposition of a declaratory judgment action concerning the initial qualification of an exempt organization is ordinarily made on the basis of the administrative record.  Rule 217(a) and (b); <u>Church in Boston v. Commissioner</u>, 71 T.C. 102, 105 (1978); <u>Houston Lawyer Referral Serv., Inc. v. Commissioner</u>, 69 T.C. 570, 574  (1978).  The Court's decision is based on the assumption that the facts represented in the administrative record are true.  Rule 217(b)(1).

B.  <u>Whether Petitioner Qualifies for Tax-Exempt Status</u>

Section 501(a) provides in relevant part that an organization described in section 501(c)(3) shall be exempt from Federal income tax unless exemption is

**[*7]** denied under section 502 or 503. To qualify as an exempt organization under section 501(c)(3), a corporation generally must demonstrate that: (1) it is organized and will operate exclusively for religious, charitable, scientific, educational, or other specified exempt purposes; (2) no part of its net earnings will inure to the benefit of a private shareholder or individual; (3) no part of its activities constitutes intervention or participation in any political campaign on behalf of any candidate for public office; and (4) no substantial part of its activities consists of political or lobbying activities. Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1062 (1989).

Qualification as a corporation described in section 501(c)(3) not only provides an exemption from Federal income tax, but also generally permits the corporation to solicit and accept donations which normally are deductible by the donor against his or her Federal tax. See sec. 170(c); Bob Jones Univ. v. United States, 461 U.S. 574, 578 (1983).

Section 1.501(c)(3)-1(b)(1)(i), Income Tax Regs., provides that an organization is organized exclusively for one or more exempt purposes only if its articles of organization: (a) limit the purposes of such organization to one or more exempt purposes; and (b) do not expressly empower the organization to engage,

**[\*8]** otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes.

Section 1.501(c)(3)-1(c)(1), Income Tax Regs., provides that an organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

Section 1.501(c)(3)-1(e)(1), Income Tax Regs., provides that an organization may meet the requirements of section 501(c)(3) although it operates a trade or business as a substantial part of its activities, if the operation of such trade or business is in furtherance of the organization's exempt purpose or purposes and if the organization is not organized or operated for the primary purpose of carrying on an unrelated trade or business, as defined in section 513.

Section 513(a) defines the term "unrelated trade or business" to include "any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable * * * purpose or function constituting the basis for its exemption under section 501".

[*9] The Court has concluded that the term "trade or business" as it is used in sections 512 and 513 has the same meaning given the term in other sections of the Code. Orton v. Commissioner, 56 T.C. 147, 162 (1971) (citing Cooper Tire & Rubber Co. Employees' Retirement Fund, 36 T.C. 96, 100 (1961), aff'd per curiam, 306 F.2d 20 (6th Cir. 1962)).

Respondent contends that petitioner does not qualify as an exempt organization under section 501(a) on the alternative grounds that (1) petitioner will not operate exclusively for an exempt purpose as required by section 501(c)(3), and (2) petitioner will operate as a "feeder organization" within the meaning of section 502.[5]

Petitioner asserts that although it "will fulfill its purpose by engaging in activities that others engage in for commercial gain", its primary motivation is charitable. Petitioner maintains that its "'business' will not generate a financial profit since it will be supplying the good of charitable contribution to its users commensurate in scope with its operational revenue." In short, petitioner contends

---

[5]Sec. 502(a) provides the general rule that "An organization operated for the primary purpose of carrying on a trade or business for profit shall not be exempt from taxation under section 501 on the ground that all of its profits are payable to one or more organizations exempt from taxation under section 501." Because we hold that petitioner will not operate exclusively for an exempt purpose and, therefore, is not an exempt organization under sec. 501(a), we need not address the question whether petitioner is a "feeder organization" under sec. 502(a).

**[\*10]** that its primary purpose is not to operate a trade or business but rather is a charitable one--to facilitate the donation of its profits to other charitable organizations.

In accordance with section 1.501(c)(3)-1(c)(1), Income Tax Regs., we must consider whether petitioner will engage primarily in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3). The record reflects that petitioner's primary activity will be to operate a Web site through which its customers may purchase flowers at market prices from a network of florists. Petitioner intends to engage in this sales-based business, in direct competition with commercial flower brokers, on a regular and continuous basis with the ultimate aim of maximizing profits in the form of commissions paid on each transaction that it completes. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987) (a trade or business is an activity that is continuous and regular and is undertaken with the primary purpose of deriving income or profit). Thus, contrary to petitioner's position, its primary activity is not a charitable one, but rather it is a commercial activity that amounts to an unrelated trade or business within the meaning of section 513. See sec. 1.501(c)(3)-1(e)(1), Income Tax Regs.

Selling flowers at market prices on the Internet is not substantially related to an exempt purpose under section 501(c)(3), except insofar as it provides petitioner

[*11] with income that it intends to distribute to charitable organizations.  See, e.g., Piety, Inc. v. Commissioner, 82 T.C. 193 (1984) (holding a corporation that conducted bingo games and contributed its profits to various charitable organizations was operated for the primary purpose of carrying on a trade or business (i.e., deriving profits from bingo games) and was not operated exclusively for an exempt purpose under section 501(c)(3)).

To summarize, petitioner will not be engaged primarily in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3), and more than an insubstantial part of its activities will not be in furtherance of an exempt purpose.  See sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.  Because petitioner will not be operated exclusively for an exempt purpose, it does not qualify as an organization that is exempt from Federal income taxation under section 501(a).

To reflect the foregoing,

Decision will be entered

for respondent.